In re ADVENT. MANAGEMENT CORPORATION, a California corporation, Debtor.

TAYLOR ASSOCIATES, Appellant,

v.

Lawrence A. DIAMANT, Chapter 7 Trustee, and United States Trustee, Appellees.

BAP No. CC–94–1413–HMeV.
Bankruptcy No. LA–89–03782–JD/KM.
Adv. No. LA–91–61036–KM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 1994.

Decided Feb. 16, 1995.

Neil J. Rubenstein, San Francisco, CA, for appellant.

Gregg D. Lundberg, Irving M. Gross, Los Angeles, CA, for appellees.

Before HAGAN, MEYERS and VOLINN, Bankruptcy Judges.

## *OPINION*

HAGAN, Bankruptcy Judge:

Lawrence Diamant ("trustee") is the Chapter 7 trustee for the debtor, Advent Management Corporation ("Advent"). The trustee commenced an action against Taylor Associates ("Taylor") to recover sums alleged to be either avoidable preferences under section 547,[1] or fraudulent transfers under section 548. The bankruptcy court granted partial summary judgment to the trustee, holding, *inter alia*, that the transfers to Taylor were transfers of an interest of the debtor in property. Taylor filed two motions for reconsideration. Both motions were denied. Taylor appeals the denial of the second motion. We AFFIRM.

## FACTS

1. *Facts Underlying the Disputed Transfers.*

This action involves a three-sided transfer. Prior to bankruptcy, Taylor provided temporary services to Coastal Insurance Company ("Coastal"). Taylor received payment for these services from Advent, the sole owner of Coastal. It is these payments that are the subject of this adversary proceeding.

Coastal underwrote insurance policies, including auto insurance policies for high-risk drivers. However, Coastal had no employees and few of the physical assets necessary to conduct the business. Advent possessed "virtually all" of the employees and most of the furniture, fixtures, and equipment needed for operations. Advent handled all of Coastal's day-to-day administrative operations.

Advent had an unwritten agreement with Coastal regarding compensation for its services as Coastal's managing agent. Advent received 25% of premiums earned and approximately 100% of the policy fees earned, in addition to unallocated loss adjustment expenses representing 6% of the premiums written.

However, in addition to these funds, Coastal diverted over $48 million in assets to Advent. These transfers were recorded in Coastal's books as "advances." There was no written agreement or memorialization of the transfers, they were not collateralized, and there was no interest charged. A report of the California Auditor General concluded the advances were "payments on expenses its affiliates had not fully incurred yet and might never incur if the policies they were writing were not renewed each month." Auditor General's Report, Taylor's Excerpts of Record (hereinafter "Taylor's ER") at 462. The "Task Force Report on Coastal Insurance Company," prepared by the California Department of Insurance, indicated some of the "advances" to Advent went into personal loans to officers and directors, and personal and other expenses associated with Advent's operations. Task Force Report, Taylor's ER at 620–626.

On February 2, 1989, Coastal was taken over by the California Department of Insurance. The Insurance Commissioner for the State of California ("Commissioner") was appointed as conservator for Coastal, and later as Coastal's liquidator. Advent filed its chapter 7 petition on February 23, 1989.

2. *Procedural Posture.*

On March 14, 1991, the trustee commenced the underlying adversary proceeding against Taylor for the recovery of a number of these payments. This initial complaint sought the return of a number of allegedly preferential transfers under section 547. After conducting discovery, the trustee concluded Taylor had never been a creditor of the debtor, and filed his first amended complaint pleading an additional cause of action to recover fraudu-

1. Hereinafter, all references to "section" are to the respective section of Title 11, United States Code.

lent transfers under section 548. The first amended complaint requested return of 36 payments made in the one year prior to Advent's bankruptcy. In his motion for summary judgment, the trustee requested the return of two additional payments. The total amount transferred in all 38 payments was $193,112.09. Taylor's answer to the first amended complaint admitted that 14 of the transfers to Taylor were transfers of Advent's property. The trustee filed a motion for summary judgment on October 7, 1992. Taylor opposed the motion. Taylor contended, among other things, that there was a genuine issue of material fact as to whether the transfers were transfers of property of Advent. The bankruptcy court asked Taylor's counsel if Taylor wished a continuance to conduct further discovery on this issue, and counsel declined.

The court granted partial summary judgment in favor of the trustee. The court's findings, entered on March 8, 1993, found that the 38 transfers were transfers of property of Advent. The court concluded the trustee's evidence of a transfer from Advent's general account constituted a prima facie showing the money was Advent's property, and Taylor failed to come forward with evidence sufficient to create a genuine issue of material fact.

Taylor obtained new counsel, who on March 18, 1993, filed a motion seeking: (1) leave to amend its answer to the first amended complaint; (2) an order altering or amending the prior order, reconsidering the prior order, or alternatively granting relief from the order for excusable neglect; and (3) an order reopening discovery (hereinafter, "first motion to reconsider"). The basis for the motion was that newly-discovered evidence (three reports by public entities, including the two cited above) raised a genuine issue of material fact as to whether the transfers were of property of Advent. The motion was also based on the argument that Taylor's previous counsel erred, first in admitting that 14 transfers were transfers of property of the debtor, and second in declin-

ing additional discovery. Taylor contended the transfers were transfers of money misappropriated from Coastal by Advent, and consequently Advent held those monies in constructive trust for Coastal.

A hearing on the first motion to reconsider was held on May 5, 1993. The court denied all aspects of the motion. The court found that the previous counsel had not admitted the 14 transfers or declined additional discovery by mistake, but as a strategic decision regarding the conduct of the case. The court also concluded Taylor would be unable to trace the funds sufficiently to establish the existence of a constructive trust.

With specific regard to the motion to reconsider the prior summary judgment ruling, the court noted it could be analyzed under either Rule 59(e) [2] or Rule 60(b). The court held the three reports could have been discovered through due diligence at the time of the summary judgment hearing, and concluded relief under Rule 59(e) was therefore not appropriate. The court also rejected the conclusion it should reconsider under Rule 60(b), because there was no excusable neglect; the previous counsel had made a strategic decision not to contest the issue. The order denying the first motion to reconsider was entered on July 8, 1993.

Taylor filed its "Notice of Motion and Motion for Reconsideration of Order Re: 'Property of the Debtor'" on January 28, 1994 (hereinafter, "second motion to reconsider"). This motion was based on the Ninth Circuit Court of Appeals decision in *Mitsui Manuf. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321 (9th Cir. 1994). In *Unicom*, the Court of Appeals dealt with an action to recover an avoidable preference under section 547. The debtor had wrongfully obtained a check that should have been paid to a creditor. Subsequently, the debtor paid the creditor the amount the debtor had wrongfully received, and then filed its petition in bankruptcy. The Court of Appeals held that the trustee for the debtor could not recover the transfer as a preference, because the funds were held subject to

---

**2.** Unless otherwise noted, all references to "Rule" are to the respective rule of the Federal   Rules of Civil Procedure.

a constructive trust on the creditor's behalf and thus were not property of the debtor as is required by section 547(b). The court's reasoning was as follows: (1) "property of the debtor" means property that would have been property of the estate under section 541 but for the transfer, 13 F.3d at 324; and (2) property held in constructive trust is not property of the estate, and therefore is not property of the debtor, 13 F.3d at 324–25.

The trustee objected, presenting a number of arguments in response to Taylor's motion. The trustee contended Taylor could not trace the funds allegedly held by Advent in constructive trust, and therefore that Taylor was not entitled to argue that a constructive trust exists. The trustee also argued that the evidence showed that Advent was rightfully entitled to some of the monies received from Coastal, and therefore Taylor could not avoid the tracing requirement.

The bankruptcy court denied Taylor's second motion to reconsider. At oral argument, the court held that *Unicom's* holding was limited to the circumstance where the recipient of the transfer was also the beneficiary of the constructive trust. Because Taylor was not the beneficiary of the constructive trust, the court concluded Taylor could not interpose Coastal's alleged constructive trust as a defense. The court noted that there was no evidence Coastal ever tried to establish a constructive trust against the funds. Additionally, the court held Taylor failed to trace the funds Taylor received to funds Advent held in constructive trust for Coastal.

Taylor and the trustee stipulated to an interlocutory appeal. The bankruptcy court entered an order staying the proceeding until either the application for an interlocutory appeal was denied, or the appellate court issued a final order. The Panel granted leave to appeal.

### 3. Evidence Regarding the Constructive Trust.

After Coastal was taken over by the California Department of Insurance, the trustee and the Commissioner (as liquidator of Coastal) entered into a "Stipulation to Compromise Controversies." The purpose of this stipulation was to resolve various competing claims between Coastal and Advent, and to divide responsibility for pursuing claims against third parties. This stipulation contained two provisions relevant to this appeal. First, Advent would have "allegedly" been entitled under the "purported" unwritten agreement to 25% of premiums collected postpetition. Stipulation to Compromise Controversies, Taylor's ER at 22–23. The Commissioner agreed to tender to the trustee $4.9 million, representing 25% of all premiums collected postpetition, in exchange for the trustee waiving all right to any other administrative fees.

Second, the stipulation addressed the claims Coastal had against Advent's bankruptcy estate. The stipulation states that there was a "substantial controversy" about the "payment, transfer, and advances of funds" between Advent and Coastal, and that the resolution of the exact amount of the claims "may be impossible to determine." *Id.*, Taylor's ER at 25–26. The trustee and the Commissioner agreed that Coastal should have "an allowed unsecured claim in the amount of $48,990,434.62." *Id.*, Taylor's ER at 26. "Except for the allowed Coastal Claim ..., the Commissioner and the Trustee hereby waive, release and absolve each other from any and all claims, demands, damages and liabilities of every kind and nature...." *Id.*

The Task Force Report made the following comments regarding the tracing of the funds diverted by Coastal to Advent:

> In most instances ... the examiners were not able to correlate specific deposits with specific disbursements. (AMC [Advent] commingled the advances from Coastal with the funds they received from Coastal for earned commissions and policy fees. These commingled funds were then used to make various expenditures.) Nevertheless, it is readily apparent that Coastal Insurance Company was the source of nearly all of the funds available to AMC. As a consequence, it is logical to assume that the disbursements made by AMC were made with Coastal monies.

Task Force Report, Taylor's ER at 617. A few pages later, the Task Force Report

states, "While we cannot directly relate the advanced funds to specific AMC expenditures, the volume and dollar amounts of the advances are such that one can say with certainty that a portion of the advanced funds diverted from Coastal were used for the following expenditures of AMC." *Id.,* Taylor's ER at 620. The Task Force Report indicates that, in the account from which Taylor was paid, 93% of the funds deposited in 1988 came from Coastal.

The Declaration of Roger Shlonsky, an accountant retained by Taylor, was introduced in support of Taylor's first motion to reconsider. In it, Mr. Shlonsky states:

> Based upon my review of the above mentioned documents, it is my opinion that it cannot be fairly concluded that the cash used to pay Taylor, within the one year period prior to Advent Management Corporation's ("AMC") filing of its chapter proceeding [sic], belonged to AMC. . . . It is possible that a portion of the Coastal deposits into AMC's general bank account may have related to the payment of a management fee to which AMC may have been entitled. . . . Due to the facts [sic] that virtually all of the monies deposited into AMC's general bank account came from Coastal and there was a significant diversion of Coastal funds to AMC, it is not reasonable to assume that all of the funds in the general bank account belonged to AMC. In order to determine whether the funds in AMC's general bank account belonged to AMC or to Coastal, one would have to (1) determine the source of each deposit; (2) determine the reasons for each deposit; (3) determine reasons for each withdrawal; and (4) obtain a copy of the Managing Agent Agreement ("Agreement") between Coastal and AMC. The Agreement is necessary to determine the amount of funds received from Coastal which represented compensation to which AMC may have been entitled. In the absence of such information, it cannot be fairly concluded that the funds in the general bank account used to pay Taylor belonged to AMC and represented AMC's property.

Declaration of Roger Shlonsky, Trustee's Excerpts of Record 6 at 403–04.

### ISSUE

The trustee and Taylor stipulated to the following issue on appeal:

> [W]hether, in view of the holding in *Unicom,* and in light of the evidence presented to the Court in the Trustee's motion for summary judgment and the later motion for reconsideration, the Court should have held that there was a genuine issue of fact as to whether the transferred funds were "property of the debtor," thereby precluding summary adjudication on this issue in favor of the Trustee.

Stipulation for Interlocutory Appeal, Taylor's ER at 892.

### STANDARD OF REVIEW

█ This case appears on its face to be a denial of a motion under Rule 60(b). (Taylor relied in part upon Rule 60(b) in its second motion to reconsider.) Normally, "an appeal from a denial of a Rule 60(b) motion brings up only the denial of the motion for review, not the merits of the underlying judgment." *Martinelli v. Valley Bank (In re Martinelli),* 96 B.R. 1011, 1013 (9th Cir. BAP 1988).

█ However, the present case does not involve Rule 60(b), nor should this restriction upon review be applied here. Rule 60(b), made applicable here by Rule 9024 of the Federal Rules of Bankruptcy Procedure, by its terms applies only to a *"final* judgment, order, or proceeding". F.R.C.P. 60(b) (emphasis added). A grant of partial summary judgment is not inherently final. *Service Employees Int'l Union, Local 102 v. County of San Diego,* 35 F.3d 483, 485 (9th Cir.1994). Rather, the motion would appear to be more properly considered within the reach of Rule 54(b), made applicable here by Rule 7054(a) of the Federal Rules of Bankruptcy Procedure:

> [Absent certain circumstances not relevant here], any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the

claims and the rights and liabilities of all the parties.

F.R.C.P. 54(b). Therefore, the limitations on review of an appeal from denial of a Rule 60(b) motion are not relevant here.

Nor should such a limitation be imposed in the present case. Because the grant of partial summary judgment regarding "property of the debtor" is an interlocutory order, it will be merged into any final judgment and may be appealed at that time. *See Balla v. Idaho State Board of Corrections*, 869 F.2d 461, 468 (9th Cir.1989). A decision not to meet the merits of the partial summary judgment would merely postpone review of the issue, since Taylor was not bound to bring its appeal at this time.

Such a decision would, for this reason, also materially undermine the purpose behind permitting this interlocutory appeal. The parties stipulated that an interlocutory appeal regarding the application of *Unicom* would materially advance the termination of the case, and be in the interests of the parties as well as the interest of judicial economy. The bankruptcy court entered an order finding that a decision regarding *Unicom's* application would materially advance the termination of the case. These interests, reflected in the Panel's grant of an interlocutory appeal, are not served if the appeal does not reach the merits. The parties would be forced to litigate the issue to a final judgment and take an appeal as of right, the very thing this interlocutory appeal was granted to prevent. Accordingly, we will reach the merits of the order granting partial summary judgment.

■ The grant of (partial) summary judgment is reviewed *de novo*. *United States v. Daniel (In re R & T Roofing Structures & Commercial Framing, Inc.)*, 887 F.2d 981, 984 (9th Cir.1989). "The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

## DISCUSSION

While the parties have stipulated to a single issue on appeal, in fact this appeal consists of two distinct issues. The first is whether a party who is not the beneficiary of a constructive trust may assert the existence of a constructive trust to render property not "property of the debtor" for the purpose of section 548. If it may, the second issue is whether Taylor met its burden of presenting evidence sufficient to avoid summary judgment.

1. *Property Allegedly Subject to a Constructive Trust is "Property of the Debtor" Unless and Until the Constructive Trust Beneficiary Successfully Establishes the Existence of a Constructive Trust.*

A. The Nature of a Constructive Trust.

■ A constructive trust is an equitable remedy imposed to prevent unjust enrichment. *See, e.g., Murphy v. T. Rowe Price Prime Reserve Fund, Inc.*, 8 F.3d 1420, 1422–23 (9th Cir.1993) (citing California case law); *Taylor v. Fields*, 178 Cal.App.3d 653, 665, 224 Cal.Rptr. 186 (1986). California has codified the definition of a constructive trust in two statutes. The first provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal.Civ.Code § 2223 (West Supp.1994). The second provides:

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

Cal.Civ.Code § 2224 (West Supp.1994).

B. Definition of "Transfer of an Interest of the Debtor in Property."

Section 548 provides that "[t]he trustee may avoid any transfer of an interest of the debtor in property", where that transfer is fraudulent under section 548. 11 U.S.C. § 548(a). This parallels section 547, which permits the trustee to avoid "any transfer of an interest of the debtor in property", where

that transfer is preferential under section 547. 11 U.S.C. § 547(b).

The term "interest of the debtor in property" is not defined. *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

*Id.; see also Unicom*, 13 F.3d at 324. Accordingly, the courts refer to section 541 to determine what interests, if any, would have been property of the estate had the transfer not taken place. *Begier*, 496 U.S. at 58–59, 110 S.Ct. at 2263; *Unicom*, 13 F.3d at 324.

*Unicom* continues this analysis as follows.

> The relevant statute broadly—and somewhat unhelpfully—defines property of a debtor's estate as including "all legal or equitable interests of the debtor in property". 11 U.S.C. § 541(a)(1). However, it does not include "any power that the debtor may exercise solely for the benefit" of another, 11 U.S.C. § 541(b)(1), nor does it include "[p]roperty in which the debtor holds ... only legal title and not an equitable interest". 11 U.S.C. § 541(d). Thus, something held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor for purposes of section 547(b). *Begier*, 496 U.S. at 58–59, 110 S.Ct. at 2263; *Sierra Steel, Inc. v. S & S Steel Fabrication (In re Sierra Steel, Inc.)*, 96 B.R. 271, 273 (9th Cir. BAP 1989).

> In the instant case, of course, we are dealing with a particular type of trust, *viz.*, a constructive trust that allegedly arose by operation of state law. Although we have

never expressly held that the same rule (viz., funds held in trust are property neither of the debtor nor of the bankruptcy estate) should apply as well to situations involving funds held by a debtor in constructive trust, the rule would seem to apply with equal force to both situations. For example, the legislative history to section 541 indicates that property held in constructive trust should not be considered property of the debtor:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

> H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6324; S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. *See also Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1217 n. 3 (9th Cir.) (dictum), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *In re Sierra Steel, Inc.*, 96 B.R. at 273.

*Unicom*, 13 F.3d at 324–25. This analysis is consistent with prior precedent. *See, e.g., Krommenhoek v. A–Mark Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 315 (9th Cir.1991) ("Property in which the debtor possessed only legal title cannot be recovered for the benefit of the bankruptcy estate."); *Golden Mortgage Fund # 14 v. Kennedy (In re Golden Triangle Capital, Inc.)*, 171 B.R. 79, 81–82 (9th Cir. BAP 1994) ("It is well settled that property in the debtor's hands that belongs to another does not become property of the estate".).[3]

---

**3.** As noted in the facts, the Commissioner on behalf of Coastal entered into a stipulation that: (1) Coastal's claims against Advent would be allowed as unsecured claims; and (2) that Coastal otherwise waived any and all other rights and

claims against the bankruptcy estate. Such a compromise would mean Coastal has waived whatever right it may have had to assert a constructive trust. Because Coastal cannot assert a constructive trust against the property, the prop-

C. Advent Would Have Had a Vested Ownership Interest in the Funds Unless and Until Coastal Obtains a Constructive Trust.

Cases such as *Unicom* and *Golden Triangle* address the situation where the beneficiary of the constructive trust defends an action to recover the property by asserting the existence of the constructive trust. Court recognition of the existence of the constructive trust removes the property from within the definition of "property of the estate." In these cases, the act of litigating the defense establishes the existence of the constructive trust.

■ However, "[a] constructive trust is not the same kind of interest in property as a joint tenancy or a remainder." *Torres v. Eastlick (In re North American Coin & Currency, Ltd.),* 767 F.2d 1573, 1575 (9th Cir. 1985), *amended,* 774 F.2d 1390 (9th Cir.1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). A constructive trust is a remedy; as such, it is inchoate until its existence is established by court order. *Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1419 (9th Cir.1985) ("No state court decree imposing a [constructive] trust exists in the present case; thus appellants' entitlement to such a remedy is inchoate, at best."); *North American Coin,* 767 F.2d at 1575; *Airwork Corp v. Markair Express, Inc. (In re Markair, Inc.),* 172 B.R. 638, 642 (9th Cir. BAP 1994). *See also Chbat v. Tleel (In re Tleel),* 876 F.2d 769, 772 n. 7 (9th Cir.1989) ("[W]here a constructive trust has only been *requested* by Chbat and has not even been imposed by a state court, a claim of constructive trust may not represent as firm an interest in property as a resulting trust.") (emphasis in original). As the panel stated in *Markair:*

Because it is a *remedy,* a constructive trust cannot affect rights in the res until it is imposed. A constructive trust imposed by state law pre-petition would therefore exclude the res from the debtor estate. If

the remedy remains inchoate post-petition, however, it is subordinate to the trustee's strong arm power.... *The incipient beneficiary of a constructive trust has no rights greater than any other creditor of the debtor who has not reduced his claim to judgment and perfected it.*

172 B.R. at 642 (first emphasis in original; second emphasis added) (citation omitted). *See also XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1451 (6th Cir.1994) (alleged beneficiary of constructive trust had no equitable interest in property, because a constructive trust does not exist until the alleged beneficiary obtains a judicial declaration impressing such a trust).

■ The inchoate nature of a constructive trust as reflected in these cases is based on the fact that a constructive trust can only be established by litigation, and the litigation must be successful before the property right is absolute. Numerous case holdings demonstrate that a constructive trust is dependent on the beneficiary litigating the right to a constructive trust. Because it is a remedy, the right to a constructive trust is subject to the statute of limitations on the underlying action that gives rise to the right to a constructive trust. *E.g., Davies v. Krasna,* 14 Cal.3d 502, 516, 121 Cal.Rptr. 705, 535 P.2d 1161, 1170 (1975). The beneficiary is not entitled to a constructive trust if it cannot trace the trust res into its succeeding transfigurements. *E.g., Heckmann v. Ahmanson,* 168 Cal.App.3d 119, 136, 214 Cal.Rptr. 177 (1985). The beneficiary's interest in the constructive trust res is cut off if the trust res is sold to a bona fide purchaser for value. *E.g., Ehret v. Ichioka,* 247 Cal.App.2d 637, 643, 55 Cal.Rptr. 869 (1967). The beneficiary's interest is also terminated by the levy of a judgment creditor, even where an action is proceeding to establish the constructive trust and the judgment creditor knows that a constructive trust is alleged. *CHoPP Computer Corp., Inc. v. United States,* 5 F.3d 1344 (9th

erty would be property of the estate but for the transfer to Taylor. Consequently, the transfer to Taylor would be a transfer of property of the debtor under section 548. This alone would have been sufficient to require affirmance of the bankruptcy court. However, the parties have

not raised this argument, nor addressed the issue of whether the stipulation has received the necessary court approval to be a binding agreement. F.R.B.P. 9019(a). Accordingly, we will treat the argument as waived.

Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994) (interpreting California law). Where there is no order recognizing a constructive trust prepetition, a trustee in bankruptcy may avoid a constructive trust in real property through the exercise of the strong arm powers of section 544(a)(3). *Nat'l Bank of Alaska, N.A. v. Erickson (In re Seaway Express Corp.),* 912 F.2d 1125, 1127–29 (9th Cir.1990); *Tleel,* 876 F.2d at 771–74. In bankruptcy, it does not end the matter for a court to find that state law would impose a constructive trust over certain property; the constructive trust will not be given effect if it is against the federal bankruptcy policy favoring ratable distribution to all creditors. *Unicom,* 13 F.3d at 325 & n. 6; *Golden Triangle,* 171 B.R. at 82.

▪ Taylor's argument attempts to separate the existence of grounds supporting the imposition of a constructive trust from the litigation necessary to establish the trust. Unlike cases such as *Unicom,* proving Advent obtained the property under circumstances that would support imposition of a constructive trust does not litigate the issue of whether a constructive trust would be imposed, because that litigation must be done by the beneficiary. Assuming the factual grounds exist for imposing a constructive trust, Coastal's right to such a trust may be limited by any number of circumstances: Coastal may have waived its right to that remedy (see note 3 supra); Coastal may never file an action; if filed, Coastal's action may be barred by the statute of limitations; any action that is filed might be settled on terms that do not impose a constructive trust; Coastal may file an action and establish a right to a constructive trust, but nonetheless have its trust subsumed by the policy favoring ratable distribution to creditors. In other words, Taylor can at best establish that the funds, if returned, *might* eventually be subjected to a constructive trust. Unless and until Coastal actually litigates that action to a favorable judgment, however, its right to a constructive trust is a mere possibility. Absent the transfer to Taylor, Advent would have full ownership of the funds. Only Coastal's successful establishment of a constructive trust could deprive Advent of that ownership interest.

### D. Advent's Interest in the Funds Would Have Been Property of the Estate Under Section 541.

The issue in this case therefore turns upon whether Advent's ownership interest in the funds, in the absence of the transfer to Taylor, would have been property of the estate. We conclude that it would. Section 541 provides that the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Absent the transfer to Taylor, Advent's interest in the property is complete. Only a successful action by Coastal could nullify Advent's interest.

In *Neuton v. Danning (In re Neuton),* 922 F.2d 1379 (9th Cir.1990), the debtors, a husband and wife, filed bankruptcy and listed in their schedules an interest in a trust of unknown value. The trust granted a life estate in the husband's mother, with a share of the trust income to go to her living children upon her death. The debtors' interest in the trust was therefore contingent (upon the husband surviving the mother) and unvested (until the mother died). The mother died after bankruptcy was filed, and the issue was whether the trust proceeds were property of the estate. The Ninth Circuit Court of Appeals held that the contingent beneficial interest in the trust became property of the estate on the date the bankruptcy was filed. 922 F.2d at 1382–83 (collecting cases).

Had there been no transfer to Taylor, Advent's interest in the funds would have been both uncontingent and vested. Only if Coastal both asserts and demonstrates its right to a constructive trust would Advent not have had full ownership of the funds. Advent would have had, at the time the bankruptcy was filed, a greater interest in the funds than did the debtors in *Neuton.* Such a fully vested property interest is squarely within the broad scope of section 541.

Because Advent had an ownership interest unless and until Coastal establishes it did not, the transfer to Taylor was a transfer of an interest of the debtor in property. Ad-

vent was entitled to summary judgment on this issue as a matter of law.

### E. Taylor Does Not Face a Potential Double Liability Under This Analysis.

■ Taylor argues that this conclusion places it at risk of being forced to pay twice: first, to return the funds to Advent's bankruptcy estate as a fraudulent transfer or an avoidable preference; and second, to return the funds to Coastal as property subject to a constructive trust. We reject this argument. Taylor's only liability to Coastal is as a constructive trustee. Where the avoidance action is brought prior to any action by Coastal to impose a constructive trust, any verdict requiring Taylor to pay the funds over to the Advent bankruptcy estate will deprive Taylor of any funds subject to Coastal's alleged constructive trust. If Taylor does not have any property subject to a constructive trust, it is not liable to Coastal on that ground.

Nor is a defendant such as Taylor at risk of double liability if the beneficiary brings a successful constructive trust action prior to the bankruptcy estate's avoidance action. This is for precisely the reasons set forth in this opinion: once the beneficiary litigates to a favorable judgment the right to a constructive trust, that constructive trust property right becomes choate. The property would not have been property of the estate but for the transfer, because the debtor held the property in constructive trust for the beneficiary. Because the property would not have been property of the estate, there was no transfer of an interest of the debtor in property. Because no "interest of the debtor in property" was transferred, the bankruptcy estate cannot recover the property under either section 547 or 548.

### F. The Recognition of a Constructive Trust as a Defense to Recovery of a Fraudulent Transfer is Inconsistent with Federal Bankruptcy Law and Policy.

■ The Ninth Circuit Court of Appeals has held that the mere fact state law would impose a constructive trust does not end the analysis of whether such a trust should be recognized in bankruptcy. "In the event that circumstances warrant the remedy of a constructive trust, however, this equitable reme-dy must be weighed against bankruptcy's equitable policy of ratable distribution". *Golden Triangle,* 171 B.R. at 82; *see also Unicom,* 13 F.3d at 325 & n. 6. As the Court of Appeals stated in *North American Coin,* 767 F.2d at 1575:

> A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it.... Moreover, in the case presented here it is an inchoate remedy; we are not dealing with property that a state court decree has in the past placed under a constructive trust. We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws. *See In re Visiting Home Services, Inc.,* 643 F.2d 1356, 1360 (9th Cir.1981); *Hassen v. Jonas,* 373 F.2d 880, 881 (9th Cir.1967).

767 F.2d at 1575 (citation omitted). Once grounds to impose a constructive trust have been demonstrated, the burden of proof shifts to the trustee to establish that it would be inequitable as a matter of federal bankruptcy law to impose a constructive trust. *Unicom,* 13 F.3d at 325.

■ Taylor argues the trustee has failed to prove it is inequitable to impose a constructive trust here. There is no need for the trustee to introduce additional evidence on this issue; the facts presented by Taylor demonstrate that it violates federal bankruptcy policy to recognize a constructive trust under these circumstances. As just noted, the courts are reluctant to recognize a constructive trust to the detriment of creditors of the debtor, even where the constructive trust is sought by the trust's beneficiary. Here, the question is not whether a constructive trust should be imposed. The question is whether the possibility property may eventually be subjected to a constructive trust entitles fraudulent transferees or preferred creditors to escape the reach of avoidance actions.

If a party can defend a fraudulent transfer action on the ground that someone else may be entitled to a constructive trust, neither the creditors of the debtor nor the beneficiary of the alleged trust will be benefitted. The only benefit will be to the recipient of the fraudulent transfer, who is insulated from returning the transfer to the estate without necessarily incurring any obligation to return the property to the beneficiary. The Bankruptcy Code does not require such an inequitable result. It would violate the federal bankruptcy policy favoring ratable distribution to creditors for Taylor to be able to keep an alleged fraudulent transfer because Coastal might assert title to that property.[4]

### 2. *Taylor.Has Failed to Establish That a Constructive Trust Exists.*

Even had we concluded *Unicom* permits a party to retain a transfer otherwise avoidable under section 547 or 548 because the property was held in constructive trust for a third person, we would nonetheless affirm. Taylor failed to trace the funds as is required to establish a constructive trust.

The trustee has presented evidence to show that the funds paid to Taylor were paid from Advent's general account. The evidence introduced indicates that the vast majority of the funds in that account were obtained from Coastal. The evidence also indicates that Advent did not merely receive illegal advances from Coastal, but that some of those payments were monies to which Advent was apparently legitimately entitled

under the (admittedly unwritten) management agreement. Assuming that the manner in which funds were wrongfully advanced to Advent would subject those funds to a constructive trust, the issue turns upon the burden of proof to trace funds that are alleged to be held in constructive trust.

Both the Ninth Circuit Court of Appeals and California courts have consistently held that a party seeking to establish a trust over commingled funds must trace those funds. *See, e.g., Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1217 n. 3 & 1218 (9th Cir.), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.),* 645 F.2d 794, 797–98 (9th Cir.1981); *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied sub nom. Schutzbank v. Elliott,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *Heckmann,* 168 Cal. App.3d at 136, 214 Cal.Rptr. 177; *Pay Less Drug Stores v. Bechdolt,* 92 Cal.App.3d 496, 501–02, 155 Cal.Rptr. 58 (1979); *Ichioka,* 247 Cal.App.2d at 642–43, 55 Cal.Rptr. 869. *See also* Cal.Civ.Code § 2224 ("One who gains a thing [under specified conditions] ... is ... an involuntary trustee *of the thing gained* ") (emphasis added).

Taylor contends *Unicom* has lessened or eliminated the need for it to trace specific disbursements. It bases this on footnote 5 of the opinion, which states in its entirety:

> On the facts of this case we hold that, to the extent Mitsui [the trust beneficiary] was required to "trace" its money wrong-

---

4. The essence of Taylor's argument is that a constructive trust should be recognized, but for the benefit of Taylor, not Coastal. We question whether it is compatible with the equitable nature of the constructive trust remedy, the purpose of which is to avoid unjust enrichment, to use it for the sole benefit of someone other than the one who was harmed.

Nor are we persuaded that the overall result is inequitable to Taylor. Taylor allegedly received a transfer that was either a fraudulent transfer under section 548, or an avoidable preference under section 547. If Taylor is forced to return these payments to the Advent bankruptcy estate, it will be left with a claim of questionable value against either the Advent bankruptcy estate, Coastal, or both. We are sympathetic to Taylor's plight. However, the burden borne by Taylor is neither greater nor lesser than that borne by

other creditors of Advent and/or Coastal who never received payment in the first place. If Taylor is permitted to retain the funds, it will receive full payment at the expense of other innocent creditors. It is not inequitable that Taylor should be required to pay back the funds; it is inequitable that Taylor should be permitted to keep the funds, when other creditors will receive little or nothing. *Cf. Lewis W. Shurtleff,* 778 F.2d at 1419–20 ("[A]lthough the equities clearly favor the appellants [the alleged beneficiaries of a constructive trust] as against Frontier [the alleged constructive trustee], the balance of the equities between the appellants and Frontier's other creditors is far from clear.")

We do not render any opinion on the effect the policy favoring ratable distribution to creditors might have on any action brought by Coastal to enforce a constructive trust *on its own behalf.*

fully withheld by Unicom, *see In re Esgro, Inc.,* 645 F.2d at 797–98; *In re Sierra Steel, Inc.,* 96 B.R. at 273–74, it has done so.

13 F.3d at 325 n. 5. Taylor notes that in *Unicom,* the check wrongfully obtained by the debtor was deposited in the debtor's general checking account. On the basis of this factual similarity, Taylor contends it has traced the funds to the extent necessary.

▪▪▪▪▪ *Unicom* nowhere discusses tracing other than in the footnote. It does not say tracing is unnecessary, but that it has been done to the extent necessary. It does not reject or distinguish prior Ninth Circuit precedent, but suggests that precedent has been complied with. *Unicom* thus does not demonstrate any intent to lessen the normal standards required for tracing. Facts may have existed, for example, for the court to conclude that the "lowest intermediate balance" rule applied.[5] We do not find *Unicom* to require a lessened standard of tracing.

The trustee presented evidence to show that the transfers were made from a general account of Advent. This is sufficient to shift the burden to Taylor to demonstrate the existence of a genuine issue of material fact by tracing the funds allegedly held in constructive trust. In *Bullion Reserve,* the defendant in an action to recover a preferential transfer under section 547 contended that bullion he received from the debtor, BRNA, was not property of the debtor because it had been purchased with money fraudulently obtained from other participants. The Court of Appeals stated: "Here, the money BRNA used to purchase bullion came from comingled bank accounts under BRNA's control. Because this money could have been used to pay other creditors, it presumptively consti-

tutes property of the debtor's estate." 836 F.2d at 1217. In a footnote, the court stated:

This presumption may be overcome in a variety of ways. For example, under a constructive trust theory, a program participant could claim any funds traced through BRNA's comingled accounts. *See Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.), *cert. denied,* 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966). But here, Bozek is unable to trace his funds to the bullion he received from BRNA.

836 F.2d at 1217 n. 3. *See also R & T Roofing,* 887 F.2d at 988 (preferential transfer case; the trustee's showing that the payments had been made from a commercial business account shifted the burden to the opposing party to demonstrate an issue of fact as to whether the funds could be characterized as trust assets); *Golden Triangle,* 171 B.R. at 84 (Ashland, J., concurring).

Taylor has failed to conduct any tracing. In fact, the evidence presented by Taylor indicates tracing is not possible. *See, e.g.,* Task Force Report, Taylor's ER at 614 (task force unable in most cases to correlate specific deposits with specific disbursements); Declaration of Roger Shlonsky, Trustee's ER 6, at 403–04 (setting forth the information that would be required in order to determine whether the funds in the general account belonged to Advent or to Coastal). The funds are presumed to have been Advent's sole property, subject to Taylor demonstrating they were not by tracing the funds. The trustee met his burden on summary judgment, and Taylor failed to rebut it.[6] The grant of summary judgment is affirmed.

## CONCLUSION

We therefore affirm the bankruptcy court. A constructive trust, as an inchoate remedy,

---

5. This rule is described in *R & T Roofing,* 887 F.2d at 987. In summary, if a party mingles wrongfully obtained funds with its own funds, and disbursements are made from the commingled account, there is a presumption that the disbursements were of the party's own money, not trust funds. *Id.* (citing cases). If the account balance is depleted below the amount held in trust, however, the amount withdrawn is treated as lost; subsequent deposits do not become trust property; and the beneficiary has a trust only as to the amount of the lowest intermediate balance in the account. *Id.*

6. Taylor contends that it need not show the funds it holds came from specific dollars wrongfully transferred from Coastal to Advent, just that (1) there were wrongful transfers from Coastal to Advent, and (2) that the funds Taylor holds were funds transferred from Coastal to Advent. There is no merit to this argument. "[T]he remedy of constructive trust is defeated if plaintiffs are unable to trace the *trust property* into its succeeding transfigurations." *Heckmann,* 168 Cal.App.3d at 136, 214 Cal.Rptr. 177 (emphasis added).

can only be established through litigation by the beneficiary. Taylor is not the beneficiary of the trust, and therefore cannot create Coastal's right to a constructive trust. Unless and until Coastal brings and succeeds with such litigation, Advent would have had full ownership interest of the funds but for the transfer to Taylor. The transfer of funds was therefore a transfer of an interest of the debtor in property under both section 547 and 548. Moreover, the policy favoring ratable distribution to creditors would override whatever right Taylor might have to attempt to establish a constructive trust on Coastal's behalf. Summary judgment was proper on the issue of whether there was a transfer of an interest of the debtor in property, because Advent was entitled to such judgment as a matter of law.

In addition, and independent of the above, Taylor failed to trace the funds it holds to funds held in constructive trust. Tracing is necessary to establish the trust. *Unicom* did not lessen or abrogate this requirement. On summary judgment, the trustee demonstrated that the funds were derived from an account held by Advent, thereby meeting his burden to show the funds were Advent's property. Taylor failed to create a genuine issue of material fact that the funds were held in constructive trust for Coastal. Summary judgment was proper on the issue of whether there was a transfer of an interest of the debtor in property, because there was no genuine issue of material fact.