**In re David SCHICK, Venture Mortgage Corp., and A & D Trading Group, L.L.C., Debtors.**

**Aurora Cassirer, Chapter 11 Trustee for the Estate of David Schick, Debtor, Plaintiff,**

v.

**Sterling National Bank & Trust Company of New York, Defendant.**

**Sterling National Bank & Trust Company of New York, Third–Party Plaintiff,**

v.

**The Merchants Bank of New York and Israel Discount Bank of New York, Third–Party Defendants.**

**Bankruptcy Nos. 96 B 42902(SMB), 96 B 43969(SMB), 96 B 46282(SMB). Adversary No. 98–8182A.**

United States Bankruptcy Court, S.D. New York.

March 13, 2000.

Parker Chapin Flattau & Klimpl, LLP, New York City, Joel Lewittes, Amos Alter, of counsel, for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, Herbert S. Edelman, Jeffrey T. Kirshner, of counsel, for defendant and third-party plaintiff.

Zeichner Ellman & Krause, New York City, Stuart A. Krause, Peter Janovsky, of counsel, for third-party defendant Merchants Bank of New York.

Blank Rome Tenzer Greenblatt LLP, New York City, James D. Glass, Lawrence M. Rosenstock, Deborah J. Piazza, of counsel, for third-party defendant Israel Discount Bank of New York.

## MEMORANDUM DECISION DENYING DEFENDANT STERLING BANK'S MOTION FOR SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Judge.

Aurora Cassirer, the chapter 11 trustee of the estate of David Schick, commenced this adversary proceeding to avoid and recover four preferential transfers from Sterling National Bank & Trust Co. ("Sterling" or the "Bank"). Sterling moves for partial summary judgment with respect to two of the transfers. It contends that Schick paid the Bank with money he had converted from third parties, and therefore, had no interest in the transferred property. As a result, the trustee cannot recover the transfers for the benefit of the estate.[1]

Sterling's argument is based on an erroneous legal postulate. Schick had legal title to the funds subject, at most, to an equitable duty to reconvey the funds to the victims of his conversion. The Bank, who is not the victim, lacks standing to raise their rights either offensively, or as a de-

fense in this adversary proceeding. Accordingly, its motion is denied.

## BACKGROUND

The material facts are straightforward and undisputed. In the first transaction, Schick repaid a $1 million loan to Sterling. At the time of the repayment, Schick was engaged in the business of bidding on mortgage portfolios owned by the Federal Deposit Insurance Corporation and the Resolution Trust Corporation. Schick had to show the availability of substantial funds, and raised the funds through borrowings from investors. *See Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 340 (Bankr.S.D.N.Y.1999) (*"Herskowitz"*).

Gary Fragin was one of his investors. In late February, 1996, Schick, Blackstone Associates, an entity represented by Schick, and Fragin entered into a Deposit Agreement.[2] Fragin agreed to let Schick pledge his securities as collateral for a $2 million loan. The proceeds were to remain the property of Fragin and to be held by Schick as escrow agent in a trust account at Fleet Bank. At the end of 150 days, Schick was required to return the deposit to Fragin.

After acquiring the right to pledge Fragin's securities, Schick promptly ignored his obligations under the Deposit Agreement. He used Fragin's property to collateralize a $2 million loan from Republic National Bank, and deposited the proceeds into his personal account at Sterling. He then instructed Sterling, on or about March 1, 1996, to debit his personal account in the amount of $1 million, satisfying his outstanding obligation. The trustee's first claim for relief in the adversary complaint seeks to avoid and recover this $1 million payment.

In the second transaction, Schick repaid a $500,000.00 loan to Sterling. This time, he used what were ostensibly trust funds

---

1. Sterling also contends that it was not a transferee, but instead, acted as a conduit for the third party defendants who were the actual transferees. *See Cassirer v. Sterling Nat'l Bank & Trust Co. (In re Schick)*, 223 B.R. 661 (Bankr.S.D.N.Y.1998). The pending motion does not address this issue.

2. A similar agreement was the subject of *Herskowitz*.

held by his law firm, Schick & Simon LLP.[3] On or about March 13, 1996, Schick directed the Republic National Bank to transfer $500,000.00 from the "Schick & Simon LLP IOLA Trust Account,"[4] to his personal account at Sterling.[5] Schick then used these proceeds to repay the $500,000.00 loan. The trustee's fourth claim for relief in the adversary complaint seeks to avoid and recover this payment.

## DISCUSSION

■ Sterling contends that the moneys used to repay the two loans belonged to Fragin or Schick & Simon rather than Schick. The funds would not have been "property of the estate," *see* 11 U.S.C. § 541, and hence, Schick's trustee cannot avoid and recover the transfers through her preference action. The trustee responds, *inter alia*, that Sterling lacks standing to invoke any rights Schick's victims might have.[6] The answer to the question lies in the relationship between property rights and remedies that arise from their deprivation.

■ State law determines the extent of an interest in property, absent an overriding federal policy, *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Morton v. National Bank of New York City (In re Morton)*, 866 F.2d 561, 563 (2d Cir.1989); *Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir.1989), but bankruptcy law determines whether that interest is "property of the estate." *Official Committee of Unsecured Creditors v. PSSS Steamship Co., Inc. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 569 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); *Herskowitz*, 234 B.R. at 342. A preference action is designed to recover property that would have been available for distribution to creditors but for the transfer. *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); *Glinka v. Bank of Vermont (In re Kelton Motors, Inc.)*, 97 F.3d 22, 25 (2d Cir.1996); *Herskowitz*, 234 B.R. at 342; *In re Regency Holdings (Cayman), Inc. v. The Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.)*, 216 B.R. 371, 375 (Bankr.S.D.N.Y.1998). Accordingly, the scope of "property of the estate" in 11 U.S.C. § 541 determines the scope of property interests recoverable under section 547. *Begier v. IRS*, 496 U.S. at 58–59, 110 S.Ct. 2258; *Herskowitz*, 234 B.R. at 342; *In re Regency Holdings (Cayman), Inc.*, 216 B.R. at 375.

■ "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). If the debtor holds only legal title to the property, that is all that vests in the estate. 11 U.S.C. § 541(d). The equitable title or interest is neither "property of the estate" under section 541 nor "property of the debtor" under section 547(b). *Begier v.*

---

3. I have assumed that the funds in the account were owned by Schick & Simon without regard to any possible rights enjoyed by the trust beneficiaries. This assumption does not change the analysis or the result.

4. An IOLA (or "interest on lawyer account") is authorized by New York law, and permits an attorney to deposit nominal client and trust funds into an unsegregated, interest-bearing account. *See* N.Y.Jud.Law § 497 (McKinney Supp.1999).

5. The moving papers imply that the money went directly from Schick & Simon to repay the Sterling loan without passing through Schick's personal account. Schick's personal account number at Sterling was 03–581947–

07, as indicated on the deposit slip used by Schick to deposit the proceeds of the loan collateralized by Fragin's property. (*See* Affirmation of Herbert S. Edelman, dated Dec. 27, 1999, Ex. G.) The documents submitted by Sterling on this motion show that the proceeds of the Schick & Simon transfer were also deposited into that account. (*See id.*, Ex. L.) By contrast in the *Herskowitz* case, Schick paid the transferee directly from the Schick & Simon IOLA account. *See Herskowitz*, 234 B.R. at 345.

6. Although *Herskowitz* involved many of the same issues as this case, the trustee did not raise the standing argument. *See* 234 B.R. at 344. Consequently, Sterling's reliance on *Herskowitz* is misplaced.

*IRS,* 496 U.S. at 59, 110 S.Ct. 2258; *Herskowitz,* 234 B.R. at 342.

■■■■ The central premise of Sterling's defense is that Schick did not own the funds he used to pay the Bank, *i.e.,* a thief acquires no title. Like many generalizations, this is not always true. The victim of a conversion may bring a damage action, Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution* § 5.13(1), at 545 (2d ed. 1993) (*"Dobbs"*), or under appropriate circumstances, seek equitable relief, such as the imposition of a constructive trust.[7] *Id.* § 5.18, at 592; *see Fur & Wool Trading Co. v. George I. Fox, Inc.,* 245 N.Y. 215, 156 N.E. 670, 671 (1927) (a thief may be treated as a trustee of the proceeds of the stolen property); *Provisional Government of French Republic v. Cabot,* 53 N.Y.S.2d 293, 294 (N.Y.Sup.Ct.) ("[e]ven a thief may be treated as a constructive trustee of the proceeds of his theft"), *aff'd,* 269 A.D. 745, 55 N.Y.S.2d 121 (1945). In this regard,

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee.

*Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 122 N.E. 378, 380 (1919) (Cardozo, J.); *accord Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 360 (2d Cir.1999); *Simonds v. Simonds,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189, 193 (1978); *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721, 723 (1976). The right to impose a constructive trust is determined by state law. *In re Howard's Appliance Corp.,* 874 F.2d at 93–94. Under New York law, this generally requires proof of (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance on the promise, and (4) unjust enrichment. *Koreag Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Kore-*

*ag, Controle et Revision S.A.),* 961 F.2d 341, 352 (2d Cir.1992), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *Sharp v. Kosmalski,* 386 N.Y.S.2d 72, 351 N.E.2d at 723. Nevertheless, it is a flexible remedy. Hence, New York courts do not insist that the facts fit within the framework of these four elements, *Counihan v. Allstate Ins. Co.,* 194 F.3d at 362; *Palazzo v. Palazzo,* 121 A.D.2d 261, 503 N.Y.S.2d 381, 383–84 (N.Y.App.Div.1986); *see In re Koreag, Controle et Revision S.A.,* 961 F.2d at 352 (the four factors provide important guideposts, but the constructive trust doctrine is equitable in nature and should not be rigidly limited), provided the "trustee" acquired and holds property under unconscionable and inequitable circumstances, and is unjustly enriched. *Counihan v. Allstate Ins. Co.,* 194 F.3d at 362.

■■■■ Though analogized to a trust, a constructive trust is not a trust at all, but an equitable remedy designed to prevent unjust enrichment. *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144 (2d Cir. 1999) (quoting I Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* § 17, at 243 (4th ed. 1989) (*"Scott on Trusts"*)); *Dobbs* § 4.3(2), at 401; *see Counihan v. Allstate Ins. Co.,* 194 F.3d at 361. In other words, a constructive trustee is "not compelled to convey the property [to the beneficiary] because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee." V *Scott on Trusts* § 462, at 306; *accord Simonds v. Simonds,* 408 N.Y.S.2d 359, 380 N.E.2d at 194.

■■■■ As the right is personal, the beneficiary may choose not to assert his remedy, *see United States v. Miller,* 997 F.2d 1010, 1020 (2d Cir.1993) ("the [constructive trust] remedy comes into existence, and is imposed, at the election of an aggrieved party"), or waive his remedy by failing to raise it, *see, e.g., DiNicola v. Bouchard,* 233 A.D.2d 594, 649 N.Y.S.2d 239, 240

---

**7.** Since money is fungible, replevin is not an available remedy. *Dobbs* § 6.1(1), at 598; 23

N.Y.Jur.2d *Conversion, and Action for Recovery of Chattel* § 97, at 336–37 (1982).

(N.Y.App.Div.1996); *Thompson v. Pittman*, 123 A.D.2d 683, 506 N.Y.S.2d 979, 983 (N.Y.App.Div.1986), or by electing and receiving an alternative remedy. 506 N.Y.S.2d at 982. In addition, the beneficiary may be barred from asserting a constructive trust claim because the statute of limitations has run, *Stone v. Williams*, 970 F.2d 1043, 1052 (2d Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *see Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 18 (2d Cir.1983); *Held v. Kaufman*, 91 N.Y.2d 425, 671 N.Y.S.2d 429, 694 N.E.2d 430, 433 (1998); *Thompson v. Pittman*, 506 N.Y.S.2d at 983, or because he has an adequate remedy at law. *United States v. Ribadeneira*, 920 F.Supp. 553, 556 (S.D.N.Y.1996), *aff'd,* 105 F.3d 833 (2d Cir.1997); *see Gold Sun Shipping Ltd. v. Ionian Transp. Inc.*, 245 A.D.2d 420, 666 N.Y.S.2d 677, 678 (N.Y.App.Div.1997) (where damage remedy is adequate, the shorter statute of limitations governing conversion claims applies to the plaintiff's constructive trust claim); *see generally V Scott on Trusts* § 462.3, at 318–21; RESTATEMENT OF RESTITUTION § 160 cmt. e (1937).

■ The personal nature of the equitable right prevents someone other than the beneficiary from using it offensively or defensively. Thus, a stranger cannot sue to impose a constructive trust for the benefit of a defrauded party. *See, e.g., Melenky v. Melen*, 233 N.Y. 19, 134 N.E. 822, 823 (1922) (Cardozo, J.) (where defrauded party elects not to seek redress, his wife, a stranger to the transaction, "may not elect for him, or overrule his choice"); *Aliano v. Aliano*, 251 A.D.2d 436, 674 N.Y.S.2d 404, 404 (N.Y.App.Div.1998) (plaintiffs lack standing to impose constructive trust in favor of third party). Similarly, a defendant in a conversion action cannot defend by alleging that the plaintiff held the funds in constructive trust for another. *Sperrazza v. Kail*, 699 N.Y.S.2d 609, 611 (N.Y.App.Div.1999); *see* 23 N.Y.Jur.2d

*Conversion, and Action for Recovery of Chattel* § 59, at 278 (1982) (a defendant in a conversion action may not defend by showing that a third party owned the converted property unless the defendant is in privity with the third party).

These same principles prevent a transferee in an avoidance action from maintaining that the transferred funds were held by the debtor in constructive trust for another.[8] *Taylor Assocs. v. Diamant (In re Advent Management Corp.)*, 178 B.R. 480 (9th Cir. BAP 1995), *aff'd,* 104 F.3d 293 (9th Cir.1997), decided under analogous rules of California law, is directly on point. There, Taylor Associates ("Taylor"), provided services to Coastal Insurance Company ("Coastal"). Advent Management Corporation ("Advent"), managed Coastal's day-to-day administrative operations. In addition to legitimate transfers, Coastal diverted $48 million in assets to Advent. Advent made thirty eight transfers to Taylor, totaling $193,112.09, and following bankruptcy, Advent's trustee sought to avoid and recover these transfers as preferential or fraudulent. 178 B.R. at 482–83.

Taylor defended, arguing, *inter alia,* that Advent held the transferred funds in constructive trust for Coastal, and the transfers did not, therefore, involve Advent's property or deplete its estate. The bankruptcy court rejected this position on two grounds: Taylor could not trace the funds, and lacked standing to interpose Coastal's alleged constructive trust as a defense to the avoidance claims. *Id.* at 484.

The Bankruptcy Appellate Panel affirmed, and its decision was affirmed by the Ninth Circuit Court of Appeals. As to the second ground mentioned, the BAP ruled that only the beneficiary can litigate the imposition of the constructive trust. Further, the beneficiary's rights may be limited by waiver, the failure to pursue the claim, the running of the statute of limitations, or a settlement on different terms.

---

**8.** In contrast, the transferee who is also the beneficiary of a constructive trust may oppose an avoidance claim by showing he was paid with property held for his benefit.

*Id.* at 489; *accord Wachovia Bank v. Vacuum Corp. (In re Vacuum Corp.),* 215 B.R. 277, 283 n. 14 (Bankr.N.D.Ga.1997) (where trust beneficiary waives its rights in funds, the funds are property of the estate). Thus, absent a successful challenge by Coastal, Advent's interest in the funds would be complete. 178 B.R. at 489. Finally, allowing the transferee to defeat an avoidance action by asserting the rights of the beneficiary would confound the bankruptcy goal of ratable distribution. *Id.* at 490–91 & n. 4.

Based on the foregoing, Sterling's motion must be denied. We may safely assume that Schick acquired the funds to pay Sterling under circumstances giving rise to an equitable duty to reconvey the proceeds to Fragin and Schick & Simon. He misused the collateral that Fragin entrusted to him, and transferred money from his firm's IOLA trust account in derogation of his fiduciary obligations to his firm and to the beneficiaries of that account. As a result, if the converted funds were still in Schick's personal account on the petition date, his estate would have held legal title subject to Schick's equitable obligation to reconvey the funds to Fragin and Schick & Simon. *In re N.S. Garrott & Sons,* 772 F.2d 462, 467 (8th Cir.1985). The aggrieved parties would have been entitled to follow and recover the proceeds at their election, provided, ·of course, that they could trace their money. *See Morris Plan Indus. Bank v. Schorn,* 135 F.2d 538, 539 (2d Cir.1943); *In re United Cigar Stores Co. of America,* 70 F.2d 313, 316 (2d Cir.1934). Since, however, the money was immediately transferred, they never pursued it although they might have been able to follow the proceeds into the hands of Schick's transferees.[9]

Sterling, however, is a stranger to the transactions between Schick on the one hand, and Fragin and Schick & Simon on the other. Thus, the Bank cannot elect to pursue the proceeds or otherwise exercise

Fragin's or Schick & Simon's equitable rights. This means, as the *Advent* court explained, that the Bank cannot contend in this adversary proceeding that Schick held the funds for their benefit. Under the circumstances, the transfers diminished Schick's estate, and if the trustee can prove the other elements of her preference claims, she can avoid and recover the transfers.

Sterling's motion is therefore denied. The parties are directed to contact chambers to schedule a conference for the purpose of resolving the remaining outstanding issues and fixing a trial date.

Settle order on notice.

---

9. Their possible right to do so raises an interesting paradox. The equitable rights on which Sterling relies arguably entitle Fragin

and Schick & Simon to assert those same rights against the Bank, as a transferee, or sue it for damages.