In re George E. PETERSON, Debtor.

**William H. HOWISON,**
**Trustee, Plaintiff,**

v.

**W.W. GRAINGER, INC. Master Trust**
**Committee, Linda D. Reynolds, and**
**George E. Peterson, Defendants.**

Bankruptcy No. 87–20038.
Adv. No. 87–2027.

United States Bankruptcy Court,
D. Maine.

June 16, 1988.

William H. Howison, Anthony Howison & Landis, Portland, Me., for plaintiff.

Stephen Champagne, Curtis Thaxter Stevens Broder & Micoleau, Portland, Me., for defendants.

---

12. 11 U.S.C. § 303(b).

13. *Id.*

14. *See United States v. Larinoff,* 431 U.S. 864, 53 L.Ed.2d 48, 97 S.Ct. 2150 (1977).

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

### INTRODUCTION

This adversary proceeding was commenced on June 16, 1987 when the Chapter 7 Trustee filed a four count complaint. Count I seeks a determination that one quarter (25%) of the debtor's account under his Profit Sharing Plan is property of the estate pursuant to section 541 of the Bankruptcy Code. Count II hinges on the Trustee's success on Count I and asks this court to determine that the amount included in the property of the estate is not exempt. The Trustee has, subsequent to filing his complaint, dismissed Count III. Count IV seeks a determination that the interest of the debtor's former spouse is not part of or attributable to the one quarter withdrawal interest of the debtor.

We again must consider the issue of whether an employer-funded, ERISA qualified Profit Sharing Plan in which the debtor has the ability to withdraw funds or borrow against his interest in the fund constitutes property of the estate pursuant to section 541 of the Bankruptcy Code.

### FACTS

The defendant, W.W. Grainger, Inc. Master Trust Committee is the entity appointed by W.W. Grainger, Inc. (Employer) to administer an Employees' Profit Sharing Plan. The Plan, the parties agree, is an ERISA (Employee Retirement Income Security Act of 1974) qualified plan under section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a) (1978 and Supp. 1987). The Plan is funded through the W.W. Grainger, Inc. Employees Master Trust (Trust). The debtor's rights under the plan are fully vested and his account under the plan consisted of $52,261.06 as of March 31, 1987. All contributions to the Plan are made by the employer for the exclusive benefit of participants or former participants or their beneficiaries. Section Six of the Plan governs loans and withdrawals.

Paragraph 6.1 allows a Participant who has a vested interest in an account in the Plan to borrow upon a written request to the Committee. A Participant who is receiving distributions from the Plan may not borrow. Also, the total amount of loans may not exceed the lesser of $50,000.00 or twenty-five percent (25%) of the Participant's vested interest. The loan must be repaid within five (5) years or within ten (10) years if the proceeds are used in connection with the Participant's principal residence. Loan requests can only be effective on the first day of a quarter and written requests must be made fifteen (15) days prior to that date. Finally, a Participant may only have one loan outstanding at any one time.

Paragraph 6.5 allows a Participant to withdraw an amount credited to his account in the Plan but at no time can this withdrawal exceed twenty-five percent (25%) of his total credit which he has vested. The Participant's withdrawal cannot reduce his account balance below the amount allocated to his account from employer contributions for the past two years. Participants must apply for withdrawals in writing to the Committee at least fifteen (15) days prior to the withdrawal date. Further, according to paragraph 6.6, withdrawals shall be limited for the purpose of purchasing a home, meeting college expenses, repaying a loan under paragraph 6.1, or meeting other extraordinary expenses. A Participant can only make one withdrawal every five years except more frequent withdrawals may be made to repay paragraph 6.1 loans that are in default. Finally, a Participant must repay a paragraph 6.1 loan before making any withdrawal unless such withdrawal is to repay such loan.

Although paragraph 6.1 allows the Committee to promulgate rules and regulations, no such rules or regulations have been promulgated. The defendant admitted that there are no guidelines, other than the Plan, with respect to loan requests.

### DISCUSSION

Generally, the debtor's bankruptcy estate consists of "all equitable interests of

the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541 is broad in scope. *In re Kwaak*, 42 B.R. 599 (Bankr.D.Me.1984) (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Notwithstanding this broad scope, section 541(c)(2) provides an exception to the rule so that

> [a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2). The legislative history of 541(c)(2) indicates that the purpose of the section is to preserve "restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5869.

■■ In *Kwaak*, this court effectively adopted the restrictive interpretation of section 541(c)(2), based on the legislative history, that "only traditional state law spendthrift trusts are referred to by the term 'applicable nonbankruptcy law'." *Kwaak*, 42 B.R. at 601–02. *See Also In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352, 1359 (9th Cir.1985); *In re Goff*, 706 F.2d 574, 580–82 (5th Cir.1983); *In re McLean*, 762 F.2d 1204, 1206–07 (4th Cir.1985); *In re Slezak*, 63 B.R. 625, 628 (Bankr.W.D.Ky.1986); *In re Wiggins*, 60 B.R. 89 (Bankr.N.D.Ohio 1986); *In re Matteson*, 58 B.R. 909, 911 (Bankr.D.Colo.1986); *In re Craddock*, 62 B.R. 583 (Bankr.N.D.Ga.1986); *In re La Fata*, 41 B.R. 842 (Bankr.E.D.Mich.1984); *In re Braden*, 69 B.R. 93 (Bankr.E.D.Mich. 1987); *In re De Weese*, 47 B.R. 251 (Bankr. W.D.N.C.1985); *In re West*, 64 B.R. 738 (Bankr.D.Ore.1986); *In re O'Brien*, 50 B.R. 67, 77 (Bankr.E.D.Va.1985); *In re Kerr et al.*, 65 B.R. 739 (Bankr.D.Utah 1986). Thus, an ERISA–qualified Profit Sharing Plan that contains an anti-alienation provision (as it must under ERISA) is excluded from the bankruptcy estate pursuant to

section 541(c)(2) if it is enforceable under state law as a spendthrift trust.

Both parties to this proceeding agree that the proper state law to be applied is that of Illinois. Further, it is evident from the circumstances surrounding this proceeding that Illinois law does in fact apply.

Illinois has long recognized the validity of spendthrift trusts. *See In re Dagnall*, 78 B.R. 531, 534 (Bankr.C.D.Ill.1987) (*citing Wagner v. Wagner*, 244 Ill. 101, 91 N.E. 66 (1910); *Newcomb v. Masters*, 287 Ill. 26, 32, 122 N.E. 85, 89 (1919); *Geiger v. Geer*, 395 Ill. 367, 376, 69 N.E.2d 848 (1946)). *See Also e.g. In re Di Piazza*, 29 B.R. 916 (Bankr.N.D.Ill., 1983). Generally, a spendthrift trust is a trust in which the voluntary or involuntary transfer of a beneficiary's interest is restricted. G. Bogert, *The Law of Trusts and Trustees* § 221 (2d Rev. ed. 1979); A. Scott, *The Law of Trusts* § 151 (2d ed. 1956). The debtor must show that he cannot alienate his interest in the trust and that he "does not possess exclusive and effective control over ... distribution." *Dagnall*, 78 B.R. at 534. We must consider the overall nature of the Plan, particularly looking at the extent of dominion and control which the debtor has over the Plan's assets, to determine whether the Plan comes under the exception in section 541(c)(2). *In re Crenshaw*, 51 B.R. 554, 556 (N.D.Ala.1985) (Applying Illinois law). It is also now virtually uniform among the states that a settlor cannot establish a spendthrift trust for his own benefit. *Kwaak*, 42 B.R. at 602 (*citing* Bogert, *supra*, § 223). This ensures "that though an individual can set up a trust to provide for the welfare of another, he cannot control his own assets to defraud his creditors." *Id.* The Plan in this proceeding is fully supported by employer contributions and the employee is not permitted to contribute. Thus, the debtor is clearly not the settlor of the Trust.

The spendthrift provision in this proceeding is located in the Plan at Section Fifteen. It provides:

> 15.2 Except for loans made pursuant to Section Six, no money or property in the hands of the Trustee and no benefits

under this Plan or interest in the Trust shall be pledged, assigned, transferred, sold, or in any manner whatsoever anticipated, charged or encumbered by an Eligible Employee, Participant, Former Participant, or his beneficiary or beneficiaries, or in any manner be liable in the possession of the Trustee for the debts, contracts, obligations or engagements of any person having an interest in the Trust Fund, voluntary or involuntary, or for any claims, legal or equitable, against any such person, including claims for alimony or the support of any spouse.

The Trust involved in *Kwaak* did not allow the beneficiary to withdraw or deposit funds, to borrow against his interest or to manage the deposits in any way. Accordingly, this court determined that the trust satisfied the requirements of a state law spendthrift trust and was excluded from the estate pursuant to section 541(c)(2). *Kwaak,* 42 B.R. at 602. *Accord In re Richardson,* 75 B.R. 601 (Bankr.C.D. Ill.1987); *In re Lawson,* 67 B.R. 94 (Bankr. M.D.Fla.1986); *In re Matteson,* 58 B.R. 909 (Bankr.D.Colo.1986).

The Trust or Plan involved in the case under consideration here allows a Participant to borrow, for any reason, up to twenty-five percent (25%) of the balance of his account that is vested upon a written request to the Committee. The terms for borrowing stated in the Plan are ordinary and do not create a real barrier to the Participant from obtaining a loan. Further, at oral argument, the defendant admitted that turndowns are minimal, if any. Additionally, a Participant may withdraw up to twenty-five percent (25%) of the amounts credited to his account in the Plan. Section 6.6 limits withdrawals to purchasing a home, paying college expenses, repaying a loan made obtained through the Plan or meeting other extraordinary expenses.

The obvious effect of the above provisions is to allow the Participant dominion and control over some of the funds in the Trust. These are the kind of voluntary alienations that a spendthrift provision is designed to prevent. *See In re Faulkner,* 79 B.R. 362, 366 (Bankr.E.D.Tenn.1987) (The court held that the debtor's ability to apply for a loan from the Trust Fund provided the debtor-participant "ready access" allowing impermissible control of the trust property thus disqualifying the Plan as a spendthrift trust); *Di Piazza,* 29 B.R. at 922 (The court held that since the debtor had an unqualified right to withdraw the corpus of an employer funded profit-sharing plan at any time, the plan was not a traditional spendthrift trust and was not excluded from property of the estate under section 541(c)(2)). Thus, twenty-five percent (25%) of the debtor's interest in the Profit–Sharing Plan does not satisfy traditional spendthrift trust requirements and is included in property of the estate pursuant to section 541(a)(1).[1] *Contra Monahan,* 68 B.R. at 997; *In re Crenshaw,* 51 B.R. at 554.

Before moving to another issue raised by the trustee, it should be noted that aside from the withdrawal and loan provisions discussed above, the Participant can gain access to the funds upon termination of employment, retirement, disability or death. As this court in *Kwaak* implicitly recognized, although the employee/Participant has the option of terminating employment, this option itself is a "significant restraint upon withdrawal of his benefits" and therefore, standing alone, does not contravene the purposes of a spendthrift provision in a profit-sharing plan. *In re Forbes,* 65 B.R. 58, 59 (Bankr.S.D.Fla.1986) (*citing Goff,* 706 F.2d at 589); *In re Sheridan,* 38 B.R. 52 (Bankr.D.Vt.1983).

Another issue raised by the trustee is whether the debtor's twenty-five (25%) percent in the Profit–Sharing Plan is exempt under 14 M.R.S.A. § 4422(13)(E). The

---

1. The invalidity of the spendthrift clause as it applies to a part of the funds does not bring the debtor's entire interest in the Plan, including those funds to which he has no rights of withdrawal or borrowing, into the property of the estate. Those funds to which the debtor has no rights of withdrawal or borrowing satisfy traditional spendthrift requirements and are therefore excluded under section 541(c)(2). *See In re Cates,* 73 B.R. 874, 877 (Bankr.D.Ore.1987); *In re Monahan,* 68 B.R. 997, 1000 (Bankr.S.D.Fla. 1987); *Lawson,* 67 B.R. at 98; *In re Berndt,* 34 B.R. 515, 520–21 (Bankr.N.D.Ind.1983).

Trustee argues that the debtor has no exemption rights.[2] The debtor has not listed any interest in the Profit–Sharing Plan as exempt. In fact, the appropriate schedule (B–4) has not even been filed. Still, the debtor may be granted an extension of time for filing schedules on motion for cause shown. *See* Bankruptcy Rule 1007(c); Local Bankruptcy Rule 1007(c). If the debtor wishes to contest the Trustee's position with respect to the exemption of the debtor's interest in the Plan, he is encouraged to file a Motion for extension of time accompanied with the appropriate schedule so that a hearing can be scheduled pursuant to Bankruptcy Rule 4003(c).

Finally, with respect to Count IV in the Trustee's complaint, this court agrees that the debtor's spouse's interest in the debtor's account in the amount reflected in the Qualified Domestic Relations Order ($9,560.92) should be applied against the remaining funds in the Plan and *not* against the twenty-five percent (25%) withdrawal and borrowing right that is property of the estate.

An Appropriate Order will be entered.

---

**2.** Section 522(b)(1) of the Code permits states to opt out of the federal exemption scheme. Maine, pursuant to this section, has adopted its own exemption statute. Me.Rev.Stat.Ann. tit. 14, § 4421–4426 (Supp.1987).