In re Laurence A. NEUTON; Esther Neuton, Debtors.

Laurence A. NEUTON, Appellant,

v.

Curtis B. DANNING, Trustee, Appellee.

No. 89–55975.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided Dec. 28, 1990.

---

Laurence A. Neuton, Los Angeles, Cal., pro se.

David R. Weinstein and Jeffrey L. Sumpter, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for trustee, appellee.

Before: NELSON and REINHARDT, Circuit Judges, and TANNER, District Judge.*

DOROTHY W. NELSON, Circuit Judge:

## OVERVIEW

Debtor Laurence Neuton appeals a decision of the Bankruptcy Appellate Panel (BAP). The panel affirmed the bankruptcy court's determination that 25% of the debtor's interest in a spendthrift trust, and all proceeds therefrom, are property of the estate. Neuton argues that his interest in the trust, because it vested after the bankruptcy petition was filed, was a contingent interest that does not belong to the estate. He also maintains that the spendthrift status of the trust bars the estate from reaching it. Finally, he faults the bankruptcy court and the BAP for failing to consider whether he needed all his income for his support. While largely affirming the BAP's decision, we further ask the bankruptcy court on remand to consider the issue of the amount Neuton will need, both at present and in the future, for his support.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are essentially uncontested. On November 12, 1987, Laurence Neuton and Esther Neuton ("the debtors") filed a joint voluntary Chapter 7 bankruptcy petition. Among the assets listed on their schedule B–2 was an interest in the Fannie Borun Trust ("trust") of unknown value. No party disputes the spendthrift or inter vivos status of the trust.[1] Its provisions require the trustee to pay Eleanor Neuton a share of trust income during her lifetime, and a share of trust income to her living children after her death.

Pursuant to California's Code of Civil Procedure, § 703.140(b)(5), debtors claimed as exempt property their "[i]nterest in all other assets of the debtors to the extent not otherwise listed in specified exemptions, the value of which is $1,135." On December 28, 1987, Eleanor Neuton died, at which point the debtors' interest in the trust vested. On January 25, 1988, the appellee-Trustee filed an objection to debtors' exemptions, refusing to exempt Neuton's interest in the trust in excess of the $1,135.00 set forth in his original schedule.

In response, appellant argued in relevant part, first, that due to the spendthrift provision, the debtors' interest in the trust was excluded from the bankruptcy estate, and second, that on the date of bankruptcy filing the interest in the trust was merely a contingent interest and therefore not part of the bankruptcy estate.

On April 7, 1988, the bankruptcy court entered a Memorandum Decision and Order in which it held that 25% of the debtor's interest in the spendthrift trust belonged to the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). It also ruled that the estate was entitled to the proceeds of the trust received by the debtors within 180 days after the petition and sustained the Trustee's objection to the extent the $1,135.00 represented debtors' interest in the trust.

Neuton appealed to the Bankruptcy Appellate Panel pursuant to 28 U.S.C. § 158(b)(1). The panel affirmed the bankruptcy court's decision that 25% of the debtors' interest in the trust and any proceeds of that 25% were property of the estate. However, the panel reversed the court's decision that all income received by appellant from the trust within 180 days after the filing of the petition belonged to the estate. Moreover, it held that the debtors could exempt $1,135.00 and all proceeds from that amount from the 25% interest in the trust owned by the estate. The panel

---

* Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

1. The language in the trust giving rise to spendthrift status is as follows:

VIII.

*RESTRICTION ON DISTRIBUTION OF BENEFICIAL INTERESTS*

The interests of beneficiaries in principal or income shall not be subject to claims of their creditors or others nor to legal process, and

remanded the case to the bankruptcy court for purposes of valuation. Neuton appeals to this court.

### JURISDICTION AND STANDARD OF REVIEW

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b). The BAP had authority to hear the appeal under 28 U.S.C. § 158(b). This court's jurisdiction flows from 28 U.S.C. § 158(d).

Because this court is in as good a position as the BAP to review the decision of the bankruptcy court, issues of law are reviewed *de novo*. *In re Kincaid*, 917 F.2d 1162, 1164 (9th Cir.1990); *In re Probasco*, 839 F.2d 1352, 1353–54 (9th Cir.1988); *In re Burley*, 738 F.2d 981, 986 (9th Cir.1984).

### DISCUSSION

Under the current Bankruptcy Code, the bankrupt estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Neuton relies upon the contingent status of his right to receive income and on the spendthrift provision of the trust to fit into one of the exceptions to this broad definition.

#### A. Property of the Bankruptcy Estate Includes Contingent Interests

■ The debtor first contends that because his interest is in a future income, he had no interest in the property as of the commencement of the case. In its memorandum decision, the BAP replied to this claim by holding that:

> As of the commencement of the bankruptcy case debtor's interest in the trust

may not be voluntarily or involuntarily alienated or encumbered.

**2.** Neuton refuted the contention that he had an interest in the corpus of the estate. The BAP subsequently conceded that it was mistaken, noting that "[t]his fact, however, does not alter our conclusion that the debtor had a beneficial interest in the trust which became property of the estate."

**3.** Neuton attempts to distinguish this case by pointing to the fact that there was no spendthrift provision in the *Dias* trust. Indeed, as the court explained:

consisted of the right to receive a share of income from the trust upon the death of Eleanor if he survived her and the right to share in the trust corpus upon termination of the trust if he was alive at that time. Because debtor's right to receive trust income or corpus was predicated on surviving Eleanor and/or others, under California law debtor had contingent interests ... [which] became property of the estate under section 541(a)(1).[2]

We agree with the BAP's position. Whether a debtor's contingent interests were acquired by the bankrupt estate was a thorny issue under the old Bankruptcy Act. In a landmark decision which largely inspired the new Code, the Supreme Court held that "the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966).

Accordingly, contingent interests of the type at issue in this case typically have been held to be property of the bankrupt estate. For example, in *In re Ryerson*, this court affirmed the BAP's holding that money to which the debtor became entitled eight months after filing for bankruptcy should be included in the estate, notwithstanding the fact that at the time of filing the debtor had an unvested, contingent interest. 739 F.2d 1423, 1425 (9th Cir.1984). Similarly, in *In re Dias* the bankruptcy court found that "a beneficial interest in a trust is an equitable interest under § 541(a)(1)" despite the fact that at the time of filing it was contingent. 37 B.R. 584, 586–87 (Bkrtcy.D.Idaho 1984).[3] *See*

> In this case, the interest of Cheryl Dias in her share of the trust in September, 1982, was not so remote or speculative as to have no value. Since no provision of the trust provides to the contrary (i.e., a spendthrift clause), Cheryl Dias could have sold or assigned that interest for value on the date of petition.

37 B.R. at 587. Neuton's error is to collapse the two inquiries—first, whether the contingency removes the trust from the bankrupt estate; second, whether the spendthrift provision does. Of course, to the extent the trust is protected by a

*also In re Bialac,* 712 F.2d 426, 431 (9th Cir.1983) ("[T]he courts have consistently said that options or contingent interests are property of the bankruptcy estate under section 541"); *In re Young,* 93 B.R. 590 (Bkrtcy.S.D.Ohio 1988) (unliquidated or contingent claims are property of the estate); *In re Turner,* 29 B.R. 628 (Bkrtcy.D. Me.1983) (contingent interest in earnest money deposit in escrow account belongs to the estate). *Cf. Restatement (2d) of Trusts* § 162 ("The mere fact that the interest of the beneficiary is contingent and not vested does not preclude creditors of the beneficiary from reaching it").

*B. 25% of Appellant's Interest in the Trust does not Enjoy Spendthrift Status*

■ Section 541(c)(2) provides that "[a] restriction on a transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Appellant contends that, in light of its spendthrift status, the trust in its entirety therefore must fall beyond appellee's reach.[4]

It is undisputed that trust provisions forbidding the voluntary or involuntary transfer of a beneficiary's interest in trust income or principal are enforceable under California law. *See* Cal.Prob.Code §§ 15300–15301; *DeMille v. Ramsey,* 254 Cal.Rptr. 573, 579, 207 Cal.App.3d 116, 126 (Cal.App. 6 Dist.1989); *In re Johnston,* 252 Cal.App.2d 923, 60 Cal.Rptr. 852, 853 (Cal. App. 1 Dist.1967). However, California has placed restrictions on the trustor's power to create a spendthrift trust. *See* Cal.Prob.

Code §§ 15301–15307. Thus, the Probate Code provides that despite such restraints a creditor may obtain an "order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the trust instrument," so long as the payment does not "exceed[ ] 25% of the payment that otherwise would be made to ... the beneficiary." Cal.Prob.Code § 15306.5. In other words, the spendthrift restriction fully protects only 75% of the interest in the trust. Because the trustee enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 544(a)(1), we agree with the BAP that the remaining one-fourth is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). In short, the bankruptcy estate possesses an income interest in one-fourth of the payments due to Neuton (subject to further applicable conditions, *see infra.*).

Neuton suggests that § 544(a)(1) does not override the Code's recognition that applicable spendthrift provisions are enforceable in bankruptcy proceedings, 11 U.S.C. § 541(c)(2). But his argument misses the point. The relevance of § 15306.5 is that it removes 25% of the debtor's interest in the trust from traditional spendthrift status. *In re Peterson* involved a roughly similar fact pattern. There, an employee-sharing profit plan allowed participants to borrow, for any reason, up to one-fourth of the balance of the account. Accordingly, the court found that this 25% did not satisfy traditional spendthrift trust requirements and therefore included it within the estate's property. 88 B.R. 5 (Bkrtcy.D.Me. 1988).[5]

---

spendthrift clause, it is beyond the reach of the estate, *see infra.* That is what distinguishes this case from *Dias.* But whether the contingent nature of the interest alone will defeat the estate's claim is an independent issue on which *Dias* provides a clear response.

**4.** "A spendthrift trust is the term commonly used to designate a trust created to provide a fund for the maintenance of the beneficiary and at the same time to secure the trust against the beneficiary's improvidence or incapacity." *In re Stephens,* 47 B.R. 85, 87 (Bkrtcy.D.Vt.1985).

**5.** Of course, "[t]he invalidity of the spendthrift clause as it applies to a part of the funds does not bring the debtor's entire interest" into the

estate. As to the remaining 75%, it "satisf[ies] traditional spendthrift requirements and [is] therefore excluded under section 541(c)(2)." 88 B.R. at 8 n. 1. Likewise, in the present case, the remaining 75% cannot be reached by the bankruptcy estate.

Neuton makes two further arguments. First, he points out that before a creditor can reach payments from a spendthrift trust, she must petition a court. In other words, on the date of filing, a creditor had only the right to *seek* application of § 15306.5. Since no creditor had exercised this right, the spendthrift provision was fully enforceable on the filing date. Second, he asserts that § 15306.5 merely sets a ceiling of 25%. Therefore, it was error to con-

### C. Determination of Income Necessary for Support

■ California law imposes a significant limitation on a creditor's right to reach payments made to a beneficiary of a spendthrift trust. Specifically, section 15306.5(c) of the California Probate Code exempts from payments to which a creditor would be entitled under § 15306.5 "any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support." Claiming that his entire income is needed for such purposes, appellant faults both the bankruptcy court and the BAP for ignoring this provision.

As a threshold matter, the trustee claims that by failing to raise this issue explicitly below, Neuton has effectively waived his right to raise it at all. In general, it is true that "[t]he rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d]' in the trial courts." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir.1989) (quoting *Rothman v. Hosp. Serv. of Southern California*, 510 F.2d 956, 960 (9th Cir.1975)). However, we are unpersuaded by appellee's argument in the instant case. First, Neuton evoked this issue—albeit somewhat cursorily—by suggesting in his *Amended Schedule of Current Income and Current Expenditures*

that he needed his entire income to meet his personal needs and support his family.

Second, and more importantly, he legitimately claims to have been led astray by the shifting legal theories that have successively governed this case. Neuton's argument before the BAP was centered on the bankruptcy court's erroneous application of § 541(a)(5)(A).[6] The issue of support income was, at best, tangential. Under these circumstances, a finding that he had waived the issue would unfairly penalize Neuton. Accordingly, only that fraction of the one-fourth interest in payments from the trust that is over and above appellant's support requirements is property of the bankruptcy estate.

■ In considering this case on remand pursuant to the BAP's orders, the bankruptcy court should therefore also address the question of what is reasonably necessary for the support of appellant and of any dependents. Bearing in mind that exemption statutes in bankruptcy law are meant to be construed liberally in favor of those intended to be benefited, this decision should be flexible enough to accommodate not only Neuton's current, but also future requirements.[7] We leave it to the bankruptcy court to devise a system whereby the value of the installments from the trust income due to the beneficiary which become property of the bankruptcy estate shall adjust to Neuton's fluctuating needs.[8]

sider that 25% of the Trust somehow belonged to the Estate *via* this hypothetical creditor. Although we recognize some force to these arguments, they fail to address the central issue which is that, by its own terms, California law extends automatic protection to a debtor's interest in a trust prohibiting alienation only *up to* 75%. Accordingly, the fact that no creditor had actually petitioned a court, and that no court had determined the amount it would allow such a creditor to reach are besides the point.

6. Both the trustee and the bankruptcy court proceeded on the assumption that the Trust interest was acquired "by bequest, devise or inheritance" and therefore embraced by section 541(a)(5)(A) of the Bankruptcy Code. Under that provision, income payments from a trust (including a spendthrift trust) which the beneficiary is entitled to receive within 180 days after the filing of the bankruptcy are brought into the bankruptcy estate. 11 U.S.C. § 541(a)(5)(A); *Matter of Moody*, 837 F.2d 719, 723 (5th Cir. 1988). However, as Neuton correctly points out, and as the BAP agreed, the Fannie Borun

Trust was an intervivos trust, unaffected by § 541(a)(5)(A). *See Newman v. Magill,* 99 B.R. 881, 884–85 (C.D.Ill.1989) (holding that "income distributions derived from an intervivos trust do not fit within" the definition of § 541(a)(5)(A) and therefore escape "the pale of the 180 day dragnet").

7. For analogous, prospective constructions of a support provision in federal bankruptcy law, see *In re Hotchkiss*, 93 B.R. 546, 547–48 (Bkrtcy.N.D.Ohio, 1988) (interpreting provision in 11 U.S.C. § 522(d)(10)(E) regarding sums "reasonably necessary for the support of the debtor and any dependent for the debtor"); *In re McCabe*, 74 B.R. 119, 122 (Bkrtcy.N.D.Iowa, 1986) (same); *In re Miller*, 33 B.R. 549, 552 (Bkrtcy.D.Minn. 1983) (same).

8. Our decision, of course, leaves unmodified the BAP's decision to allow the debtor's claim of exemption under Cal.Civ.Proc.Code § 703.140(b)(5). Thus, the estate's 25% interest

### CONCLUSION

While the trust does not escape the reach of the bankruptcy estate by virtue of its contingent nature, it is not property of the estate insofar as it enjoys spendthrift status. However, one-fourth of Neuton's interest in future payments under the trust is unprotected except to the extent that such sum is deemed necessary for the support of appellant or of his dependents. The BAP's order remanding this case to the bankruptcy court is therefore affirmed, with further instruction that the court consider the issue of income necessary to support Neuton and his dependents.

BAP ORDER TO REMAND AFFIRMED WITH MODIFICATIONS.

in the estate is further exempt to the extent of $1,135.