**NOT FOR PUBLICATION**



## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1026-KiKuF |
| ) | |
| GILES DUANE SPELLMAN,            ) | Bk. No.   12-bk-19871-WB |
| ) | |
| Debtor.         ) | |
| _____) | |
| ) | |
| BRADLEY R. KIRK & ASSOCIATES, ) | |
| INC.; BRADLEY R. KIRK,           ) | |
| ) | |
| Appellants,      ) | |
| ) | |
| v.                              ) | **M E M O R A N D U M**[1] |
| ) | |
| GILES DUANE SPELLMAN,            ) | |
| ) | |
| Appellee.       ) | |
| _____) | |

Argued and Submitted on October 22, 2015,
at Los Angeles, California

Filed - March 22, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia Wagner Brand, Bankruptcy Judge, Presiding.

Appearances:     Fritz J. Firman argued for appellants Bradley R.
                 Kirk & Associates, Inc. and Bradley R. Kirk; Eric
                 Alan Mitnick argued for appellee Giles Duane
                 Spellman.

Before:   KIRSCHER, KURTZ and FARIS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8024-1.

Creditor Bradley R. Kirk & Associates, Inc. ("Kirk") appeals an order of the bankruptcy court confirming Debtor Giles Duane Spellman's First Amended Chapter 13 Plan. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Debtor is the beneficiary of the Giles J. Spellman Living Trust ("Trust"), which was established by his now-deceased grandfather, Giles J. Spellman. Article 5 of the Trust contains spendthrift provisions limiting Debtor's ability to spend the trust proceeds until he turns thirty-five on November 22, 2017:

> (a) The Trustee shall distribute to GILES DUANE SPELLMAN, as soon as practicable after the death of Trustor, cash in the sum of ten thousand dollars ($10,000). Thereafter, on the first of each month, beginning with the month following Trustor's death, Trustee shall disburse to GILES DUANE SPELLMAN the sum of one thousand dollars ($1,000), until said beneficiary reaches the age of thirty-five (35). On said beneficiary's 35th birthday, or as soon as practicable thereafter, Trustee shall distribute to GILES DUANE SPELLMAN the entire balance of principal and earnings in said trust account. . . .

Debtor has a son who is a contingent beneficiary of the Trust should Debtor pass away before November 22, 2017. The assets of the Trust include a home located at 9503 Borson, Downey, California, in which Debtor resides.

In 2006, Debtor retained Kirk to represent him in matters relating to the Trust and litigation associated therewith. Debtor signed two agreements with Kirk, one dated May 9, 2007, and the second dated June 11, 2007. The second agreement provided that Kirk would receive a contingency fee of 33% of all amounts and property Debtor eventually received from the Trust.

In 2009, a retired judge, who was appointed to serve as a referee in the Trust litigation, found that a purported

-2-

revocation of the Trust by Giles J. Spellman in 2006 was invalid. The referee recommended that Debtor be appointed as successor trustee under the Trust and indicated in his findings that Debtor had requested that the Trust assets be distributed immediately, rather than pursuant to the terms of the Trust.

Debtor claims he believed Kirk's fee would be 3 to 7% of the Trust and only learned in 2009, after the referee entered his findings, that Kirk was claiming 33% of the Trust proceeds. Debtor also claims that he first learned during this same time that if the spendthrift provision of the Trust was removed, Debtor would immediately owe Kirk approximately $200,000 in legal fees. Debtor informed Kirk that "the fees were too high" and soon after informed Kirk that Debtor no longer wanted Kirk to represent him. Kirk initiated a fee arbitration in November 2009, which the California Bar dismissed as premature. Kirk then filed a lawsuit against Debtor in December 2009 to collect the unpaid fees.

Despite having been informed by Debtor that he no longer wanted Kirk to represent him, and after Kirk had filed its lawsuit against Debtor, Kirk filed an ex parte application with the Los Angeles Superior Court requesting that it enter a judgment that would allow the Trust assets to pass to Debtor immediately, rather than pursuant to the terms of the Trust. Kirk also requested that the Los Angeles Superior Court appoint Robert J. Dutil, rather than Debtor, as successor trustee of the Trust. The ex parte motion was granted on August 11, 2010, without notice to Debtor or Dutil, and reads:

> 1.    The Court declares that Giles D. Spellman is the sole beneficiary of the Giles J. Spellman Living Trust dated August 18, 2004 (the "Spellman 2004 Trust")

-3-

and that Daniel Wassgren's interest as a contingency remainder beneficiary has been assigned to Giles D. Spellman.

3.     The 2004 Trust is hereby modified in all respects such that Giles D. Spellman shall be entitled to immediate outright distribution of all assets owed by such Trust and Daniel Wassgren shall have no interest in the Trust.

4.     Robert Dutil is hereby appointed as sole Trustee of the Trust for all purposes.

5.     That certain deed dated March 22, 2006 purporting to transfer that certain real property commonly known as 9503 Borson, Downey, CA from the Giles J. Spellman 2004 Trust into the name of Giles J. Spellman, an individual, is hereby canceled. Title to the Borson Property is hereby quieted for all purposes in Giles D. Spellman, Trustee of the Giles J. Spellman 2004 Trust dated August 18, 2004.

Debtor and Kirk subsequently participated in a fee arbitration conducted by JAMS in December 2010. The arbitrator found in favor of Kirk, awarding it 33% of the value of the Trust. Kirk petitioned the Los Angeles Superior Court to confirm the arbitration award, which it did on March 2, 2011, ordering Debtor to pay Kirk $214,447.88.

Dutil was nominated to act as successor trustee of the Trust on March 24, 2010; Dutil accepted on March 25, 2010. On February 17, 2011, Dutil secured an order from the Los Angeles Superior Court setting aside Kirk's ex parte removal of the spendthrift provision of the Trust. Like the August 11, 2010 order, the February 17, 2011 order also canceled the deed dated March 22, 2006, that purportedly transferred the home at 9503 Borson, Downey, California from the Trust to Debtor, but "quieted title for all purposes in Robert J. Dutil, Trustee of the [Trust]." Among the reasons cited by the court for setting aside the removal of the spendthrift provision were:

-4-

2. [T]hat the Motion to Set Aside Portions of the August 11, 2010 Order has merit based on the lack of notice, the conflict of interest between Mr. Kirk and Mr. Spellman due to the civil lawsuit filed against Mr. Spellman by Mr. Kirk on December 28, 2009 which had already been filed when the Petition for Order Adopting the Report of the Referee was brought to this Court. The Court further finds that Mr. Spellman is now represented by new counsel as shown in his declaration filed December 29, 2010 and based on his declaration, the original Petition for Order Adopting the Report of the Referee were not his wishes and could not be based on California Probate Code Section 15403.

On January 31, 2012, Kirk filed a petition in the Los Angeles Superior Court requesting various relief, including entry of an order requiring Dutil to pay Kirk the monthly maintenance payments Debtor was entitled to receive under the terms of the Trust. Before a scheduled hearing on Kirk's petition, Debtor filed his voluntary chapter 13[2] petition on March 20, 2012. Debtor was 29 years old on his petition date.

Debtor filed his schedules, a chapter 13 plan and his statement of financial affairs on April 3, 2012. On Schedule B, Debtor listed under "Contingent and noncontingent interest in estate of a decedent, death benefit plan, life insurance policy, or trust" his interest in "Giles J. Spellman Trust (irrevocable, spendthrift); not property of the estate; listed and claimed as exempt out of abundance of caution. Debtor receives $1,000/month." Debtor claimed an exemption of $21,675.00 in the foregoing property pursuant to California Code of Civil Procedure § 703-140(b)(5). Debtor's other assets have a value totaling $3,400.

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

In his schedule of debts, Debtor listed a priority child support obligation of $4,038. Debtor also listed unsecured debt totaling $231,375, which consisted of debt owing to Bank of America, a bail bond company and Kirk. Debtor also listed Robert M. Papell, Esq. on his schedule F relating to a claim on behalf of Pamela Bray. Pamela Bray filed a proof of claim asserting a claim of $50,000 stemming from a dog bite incident that happened on February 25, 2011.

Debtor did not complete high school and is not employed. Per schedule J, Debtor's sole source of income is the $1,000 per month he receives from the Trust. Debtor's monthly expenses total $655, which amount includes $355 for child support, $200 for food, $5 for clothing and $50 for transportation.

To resolve an objection to confirmation by the Orange County Department of Child Support Services, Debtor filed a First Amended Chapter 13 Plan on May 30, 2012 ("Plan"). Debtor's Plan provides for payments of $345 per month for 36 months, with a proposed distribution of $7,012, or 3%, to unsecured creditors. Debtor's monthly Plan payment of $345 represents the difference between Debtor's monthly Trust income of $1,000 and his expenses of $665.

Per the notice of commencement of case entered March 20, 2012, the hearing on confirmation of Debtor's plan was originally scheduled for November 28, 2012, and the deadline for non-governmental entities to file proofs of claims was set for July 18, 2012. In a separate Notice entered April 3, 2012, the deadline for filing objections to Debtor's Plan was set for April 12, 2012. Bradley Kirk, Esq., through counsel, filed a proof of claim on July 12, 2012, asserting a claim in the amount

of $237,007.88. On November 21, 2012, Debtor objected to Bradley Kirk's proof of claim, correctly arguing that Bradley Kirk was not a creditor.

Kirk amended Bradley Kirk's proof of claim on November 28, 2012, to identify the creditor as "Bradley Kirk, Esq. & Bradley R. Kirk & Associates, Inc." The amended proof of claim again asserted a claim of $237,007.88 stemming from the judgment entered March 2, 2011, in the Superior Court.

Debtor filed an objection to Kirk's claim. On September 22 and 26, 2014, the bankruptcy court held a trial on Debtor's objection to Kirk's claim. At a hearing held December 2, 2014, the bankruptcy court entered its oral ruling, reducing Kirk's claim to $43,875, reasoning, in part:

> Mr. Kirk also had a conflict. I feel once the fee dispute arose, his conduct in going to court ex parte to confirm the petition to make the trust assets available immediately, with no notice to the new trustee or the debtor, when he did that, is troubling to me.
>
> I think he should have given them notice. There's a new trustee in place. I don't think that that was appropriate.
>
> I find Mr. Kirk's statement that he did this for the benefit of his client to be not credible. I think Mr. Kirk did this for his own benefit, rather than for the benefit of his client.

On January 2, 2015, the bankruptcy court entered an order allowing Kirk's claim as a general unsecured nonpriority claim in the amount of $43,875, with the balance of the claim denied. Kirk appealed the bankruptcy court's January 2, 2015 order.[3]

---

[3] On September 17, 2015, the United States District Court for the Central District of California reversed the bankruptcy court's
(continued...)

-7-

Bradley Kirk filed an objection to confirmation of Debtor's Plan on November 14, 2012, arguing that Debtor's bankruptcy case and Plan were filed in bad faith because Kirk had successfully obtained an order for an early distribution of the Trust, which early distribution Kirk alleges Debtor refused after learning of Kirk's fees. According to Bradley Kirk, instead of taking the early distribution, Debtor filed his chapter 13 bankruptcy case and proposed a plan that would pay Kirk pennies on the dollar, while allowing Debtor, upon turning 35, to collect hundreds of thousands of dollars from the Trust. On November 21, 2012, Debtor filed a response to Bradley Kirk's objection, arguing in part, that Bradley Kirk was not a creditor who had standing to object to confirmation of Debtor's Plan and that Bradley Kirk's "objections appear[ed] to be untimely and entirely without merit."

Kirk filed its own objection to confirmation of Debtor's Plan on October 15, 2014. Kirk, like Bradley Kirk in his earlier

[3](...continued)
ruling on Debtor's objection to Kirk's claim. According to the District Court:

> [A]t least where there is a state court Judgment establishing the amount of attorneys' fees, § 502(b)(4) does not allow a Bankruptcy Court to ignore that Judgment. Instead, 28 U.S.C. § 1738 requires that such a judgment be accorded the Bankruptcy Court's full faith and credit. "Since the confirmation of a private arbitration award by a state court has the status of a judgment, federal courts must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court."
> In re Khaligh, 338 B.R. 817, 824 (B.A.P. 9th Cir. 2006).

Bradley R. Kirk & Assoc., Inc. v. Spellman (In re Spellman), Case 2:15-cv-00507-PA, Docket No. 16 (C.D. Cal. Sept. 17, 2015). Debtor appealed this order to the Ninth Circuit Court of Appeals on September 30, 2015. Docket No. 17.

-8-

objection, argued that Debtor's bankruptcy case and Plan were filed in bad faith and, in addition, argued that Debtor's Plan failed to meet the best interest of creditors test found at § 1325(a)(4).

After the bankruptcy court made its oral ruling on December 2, 2014, regarding Debtor's objection to Kirk's claim, Kirk argued for an evidentiary confirmation hearing. Debtor countered that the bankruptcy court could rule on confirmation as a matter of law based on the evidence already before the court. The bankruptcy court agreed that further consideration of the matter was necessary and continued the December 3, 2014 confirmation hearing to January 7, 2015.

Although no January 7, 2015 minute entry appears on the bankruptcy court's docket, the transcript of Debtor's January 7, 2015 confirmation hearing reflects that the chapter 13 trustee appeared at that hearing, as did counsel for both Debtor and Kirk. No witness testimony or exhibits were offered, but counsel for Debtor and Kirk argued their respective positions. Counsel for Kirk argued, in part:

> [Debtor] doesn't meet the liquidation analysis. This case is a poster child for bad faith, and the Court ought to deny confirmation and dismiss this case, or set this matter for an evidentiary hearing, and make the Debtor come in and testify and convince you of his bona fides and convince you of his good faith.

At the conclusion of the parties' arguments, the court ruled:

> All right. I'm going to overrule the objection to confirmation by Bradley R. Kirk and Associates. I have – for good faith I look at the totality of the circumstances in making a good-faith determination here.
>
> Here, I find that the Debtor did file the case in good faith. He's exercising his rights under the law

-9-

with respect to the Spend Thrift Trust. It is what it is, and he has the right to file bankruptcy to address his debts. He has more debts than simply the debt to Bradley R. Kirk and Associates. And he has the right to file a plan that complies with the bankruptcy code, which is what he did.

And so, I think that he did file the case in good faith. The objection I found when I re-read it again today, restates many of the issues that we covered during the claim objection and, you know, Mr. Kirk and Kirk and Associates are unhappy because there's no distribution because, again, because the Spend Thrift Trust is not available to the Debtor when Mr. Kirk acted to make it available to him early. That's the crux of the argument.

And, you know, we've been through that many times already in various pleadings here, and in the testimony that we had on the claim objection trial. And the Court, upon the motion, reversed that order. It's reversed. There's a Spend Thrift Trust in place, and that's legitimate.

And so, on that basis, I find that the case was filed in good faith. And that also addresses the liquidation analysis issue, too, because it's the objection with respect to the liquidation, under Chapter 7 is, a, speculative, that the Trustee would keep the case open for three more years in order to claim that money. But, secondly, it relies on the fact that he should be able to get that money now, and that simply is not the case. So, that objection is also overruled.

The bankruptcy court's oral ruling was reduced to writing and entered on January 13, 2015. Kirk filed a timely notice of appeal on January 27, 2015.

Subsequent to entry of the confirmation order, Debtor filed on February 19, 2015, a "Certification of Compliance Under 11 U.S.C. § 1328(a) and Application for Entry of Discharge," representing he had completed all payments required under the terms of his confirmed Plan.

On October 7, 2015, Kirk filed a request that the Panel take judicial notice of the District Court's September 17, 2015 ruling

-10-

in Bradley R. Kirk & Assoc., Inc. v. Spellman (In re Spellman), Case 2:15-cv-00507-PA, Docket No. 16 (C.D. Cal. Sept. 17, 2015). Kirk argues that such ruling impacts the feasibility of Debtor's Plan. Kirk also requests that the Panel take judicial notice of the fact that Debtor appealed the District Court's ruling to the Ninth Circuit Court of Appeals on September 30, 2015. Debtor opposes Kirk's request for judicial notice, arguing Kirk's feasibility issue was not one of the issues designated or briefed on appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in finding that Debtor's proposed plan satisfied the good faith requirements of § 1325(a)(3)?

2. Did the bankruptcy court err in finding that Debtor's proposed plan satisfied the "best interests of creditors" test under § 1325(a)(4)?

3. Did the bankruptcy court abuse its discretion in not holding an evidentiary hearing on confirmation of Debtor's Plan?

## IV. STANDARDS OF REVIEW

A bankruptcy court's decision concerning confirmation of a chapter 13 plan is reviewed for abuse of discretion. Bank of Am. Nat'l Trust & Sav. Ass'n v. Slade (In re Slade), 15 B.R. 910, 913 (9th Cir. BAP 1981). This standard has two parts. First, we consider whether the bankruptcy court applied the correct legal standard; and second, we must decide whether the court's factual

-11-

findings supporting the legal analysis were clearly erroneous. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Rulings concerning confirmation of a chapter 13 plan present mixed questions of fact and law. The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard, while its legal determinations are reviewed de novo. Meyer v. Lepe (In re Lepe), 470 B.R. 851, 855 (9th Cir. BAP 2012) (citing Andrews v. Loheit (In re Andrews), 155 B.R. 769, 770 (9th Cir. BAP 1993)).

## V. DISCUSSION

Kirk, in its Opening Brief, asserts that five issues exist on appeal, even though it asserted additional issues in its Statement of Issues. We have consolidated Kirk's five issues into the three issues noted above.

### A. Good Faith

We first consider Kirk's asserted issues involving good faith. As a threshold matter, Kirk argued in its amended objection to confirmation of Debtor's Plan that:

> The Trust was revoked. The order that Mr. Kirk obtained says the Trust is valid. Mr. Spellman undid that order but he wants to cherry pick and say the revocation of the Trust is void but reject the rest of the order allowing early distribution. Mr. Spellman had all the assets in hand and then sought to void that order and put the assets out of reach of all creditors by seeking to hide behind the spendthrift provision of the [T]rust.

Kirk continues to contend on appeal that the "question of trust revocation is still an open question" because Giles J. Spellman signed a "Revocation of Living Trust" on March 22, 2006, and, thus, Giles J. Spellman's assets belonged to his probate estate

-12-

and should have been distributed to Debtor immediately. The judgment, prepared by Kirk and entered by the Los Angeles Superior Court on August 11, 2010, is set forth above.

The above judgment does not contain a paragraph 2 and is internally inconsistent in that it appoints Dutil as trustee of the Trust in paragraph 4, but then, in paragraph 5, quiets title in the property at 9503 Borson in Giles J. Spellman, Trustee of the Giles J. Spellman 2004 Trust dated August 18, 2004. The judgment, by its plain terms, modified the Trust to entitle Debtor "to immediate outright distribution of all assets owned by such Trust[.]"

Upon motion of Dutil, the above judgment was modified on February 17, 2011, to set aside that portion of paragraph 3 of the August 11, 2010 judgment that granted Debtor the "immediate outright distribution of all assets owed by such Trust[.]" The February 17, 2011 judgment also corrected the internal inconsistency in the August 11, 2010 judgment by quieting title in the 9503 Borson property in "Robert J. Dutil, Trustee of the Giles J. Spellman 2004 Trust[.]" The end effect of the two judgments was that Daniel Wassgren had no interest in the Trust, Dutil was the trustee of the Trust, title to the property at 9503 Borson was quieted in the Trust, and the spendthrift provision remained intact as originally provided for in the Trust. Consistent with the foregoing, Kirk argued in a petition filed with the Los Angeles Superior Court on January 31, 2012, that "as it stands now, all of the Trust assets remain in the Trust, and [] Dutil is acting as trustee of the Trust. The current assets of the Trust are believed to be approximately $620,000. Dutil will presumably

-13-

continue to act as Trustee until the Trust is distributed in 2018." Kirk's argument that Giles J. Spellman revoked the Trust in 2006 is contrary to the facts in the record and is an improper attack on the judgments entered by the Los Angeles Superior Court in 2010 and 2011.

In considering Kirk's § 1325(a)(3) argument, a debtor must prove that its chapter 13 plan is proposed in good faith and not by any means forbidden by law. § 1325(a)(3). The debtor, as the chapter 13 proponent, has the burden of proof in establishing good faith (as well as all other elements of plan confirmation in § 1325). Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (9th Cir. BAP 2001).

Pursuant to § 1325(a)(3), "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law." In examining application of the good faith standard in cases involving denial of confirmation of chapter 13 plans, this Panel has explained that a bankruptcy court must apply a totality of the circumstances test in determining good faith and consider "(1) whether the debtor misrepresented facts, unfairly manipulated the Bankruptcy Code or otherwise proposed the plan in an inequitable manner; (2) the history of the debtor's filings and dismissals; (3) whether the debtor intended only to defeat state court litigation; and (4) whether the debtor's behavior was egregious. [Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999)] (applying same factors for good faith filing of chapter 13 petition)." Drummond v. Welsh (In re Welsh), 465 B.R. 843, 851 (9th Cir. BAP 2012), aff'd 711 F.3d 1120, 1129 (9th Cir. 2013); see also HSBC Bank USA, Nat'l

-14-

Ass'n, as Indenture Tr. of the Fieldstone Mortg. Inv. Tr., Series 2006-1 v. Blendheim (In re Blendheim), 803 F.3d 477, 499 (9th Cir. 2015). Courts should examine a debtor's intentions and the legal effect of confirmation in light of the spirit and purposes of chapter 13. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 93 (9th Cir. BAP 1988) (citing Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1444 (9th Cir. 1986)).

Factors to be considered in determining good faith include, but are not limited to:

1.  The amount of the proposed payments and the amounts of the debtor's surplus;
2.  The debtor's employment history, ability to earn, and likelihood of future increases in income;
3.  The probable or expected duration of the plan;
4.  The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
5.  The extent of preferential treatment between classes of creditors;
6.  The extent to which secured claims are modified;
7.  The type of debt sought to be discharged, and whether any such debt is dischargeable in Chapter 7;
8.  The existence of special circumstances such as inordinate medical expenses;
9.  The frequency with which the debtor has sought relief under the Bankruptcy [Code];

-15-

10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11. The burden which the plan's administration would place upon the trustee.

In re Warren, 89 B.R. at 93.

Kirk, citing an unpublished decision entered by this Panel in Mead v. Loheit (In re Mead), BAP No. EC-09-1241-MkHDu (9th Cir. BAP June 15, 2010), aff'd, No. 10-60034 (9th Cir. June 20, 2013), suggests that Debtor's Plan was filed in bad faith because Debtor is depriving Kirk of its state law rights. In Mead, the debtor sought to discharge a secured obligation owing to an ex-spouse by mischaracterizing the debt as an unsecured debt. No evidence exists in our record that Debtor has made any misrepresentations or mischaracterizations such as were made in Mead.

More persuasive is the recent decision in Blendheim, where the Ninth Circuit Court of Appeals found that a bankruptcy court did not err in concluding that debtors had filed their chapter 13 bankruptcy case in good faith where the chapter 20 debtors filed their petition only one day after receiving their chapter 7 discharge, on the eve of a foreclosure sale, and to avoid a wholly unsecured junior lien on the debtors' principal residence. As noted in that decision, while the debtors may have been "motivated" to "avoid the foreclosure sale of their Residence," the debtors had other "additional, valid reasons" for filing their chapter 13 bankruptcy. In re Blendheim, 803 F.3d at 499. Indeed, "[m]any Chapter 13 debtors file for bankruptcy on the eve of foreclosure sale as a last resort." Id. (quoting In re Blendheim, 2011 WL 6779709, at *9 (Bankr. W.D. Wash. Dec. 27, 2011)).

-16-

Here, Debtor had other valid reasons for filing his petition, such as the debt owed to Orange County Department of Child Support Services and the $50,000 dog bite claim; he is not unlike other debtors who file a bankruptcy petition as a last resort. Under the particular facts of this case, Debtor's actions simply do not constitute bad faith.

Kirk argues in its objection to confirmation that the timing of this case cannot be coincidence. It most likely is not a coincidence, just as it is not a coincidence when debtors file bankruptcy on the eve of a foreclosure sale.

Based upon the record, Kirk has an unsecured claim against Debtor in the amount of $237,007.88. Kirk argues Debtor's Plan was not proposed in good faith because Debtor, as a beneficiary of the Trust, stands to receive assets worth $600,000 in November 2017. Other than his interest in the Trust, Debtor has minimal assets valued at $3,400. Debtor is not employed; his sole source of income is the $1,000 per month he receives from the Trust. Debtor's monthly expenses total $655, of which $355 is for child support. Debtor's Plan provided for 36 monthly payments of $345 each, which payments Debtor has made. Debtor has no secured creditors; after payment of administrative and priority claims, Debtor's plan payments will be distributed to unsecured creditors. Additionally, Debtor's Plan does not attempt to discharge an otherwise nondischargeable debt, nor is there any unfair discrimination or dishonesty by the debtor.

On the record before us and based on our analysis set forth above, we cannot conclude that the bankruptcy court committed reversible error in its application of the totality of the

-17-

circumstances test or that it clearly erred in making its good faith findings.

## B. Best Interests of Creditors

Kirk also asserts that Debtor's Plan does not satisfy the "best interests of creditors" test under § 1325(a)(4). Analysis under § 1325(a)(4) requires a court to make two determinations: (1) the present value of the property to be distributed to unsecured creditors (the value of the stream of plan payments) as of the "effective date of the plan;" and (2) the amount available to unsecured creditors if a chapter 7 liquidation were held on the "effective date of the plan." The "best interests of creditors" test has been met if the present value of the distributions to unsecured creditors as of the "effective date of the plan" is equal to or greater than the value of a hypothetical chapter 7 liquidation held on such date.

The crux of Kirk's argument is that Debtor could have had or had $600,000 in hand and that such amount should factor into the confirmation analysis. Section 541(a)(1) provides that property of a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." However, § 541(c)(2), which operates as an exception to § 541(a)(1), provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Property that falls within this latter category is excluded from property of the bankruptcy estate. See Spacone v. Atwood (In re Atwood), 259 B.R. 158, 161 (9th Cir. BAP 2001).

California law recognizes the validity of spendthrift trusts.

-18-

See Neuton v. Danning (In re Neuton), 922 F.2d 1379 (9th Cir. 1990) (citing Cal. Prob. Code §§ 15300 et seq.). The critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust's beneficiaries exercise excessive control over the trust. See In re Witwer, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992).

On Debtor's petition date, the Trust contained a spendthrift provision restricting Debtor's ability to transfer his beneficial interests and the ability of third parties to levy upon Debtor's interests. Nothing in the record, other than unsubstantiated argument of counsel, shows that Debtor exercised control over the Trust on his petition date; in fact, other than the monthly payment of $1,000, Debtor does not have access to the Trust's benefits until he turns 35 on November 22, 2017 (a postpetition event). Finally, the Debtor (as beneficiary) was not the settlor of the Trust; the Trust was thus not "self-settled." Consequently, under California law, the Trust is a valid spendthrift trust, and according to Ninth Circuit law, 75% of Debtor's interest in the Trust is excluded from property of the bankruptcy estate pursuant to § 541(c)(2). Bendon v. Reynolds (In re Reynolds), 479 B.R. 67, 75 (9th Cir. BAP 2012); Cisneros v. Kim (In re Kim), 257 B.R. 680, 688 (9th Cir. BAP 2000).

The foregoing analysis suggests that a hypothetical chapter 7 trustee could reach 25% of the Trust and that 25% of the value of the Trust should factor into the § 1325(a)(4) analysis. However, "[e]ven though a bankruptcy trustee may reach 25% of what the debtor/beneficiary is entitled to receive, that amount may be reduced by whatever amount the court determines is necessary for

-19-

the beneficiary's (and his dependents') support." In re Reynolds, 479 B.R. at 75 (citing Cal. Prob. Code § 15306.5(c); In re Neuton, 922 F.2d at 1384). While the bankruptcy court did not make specific findings on this point, the record shows that Debtor lives in the home at 9503 Borson. Based on numbers posited by Kirk, the home represents roughly one-half the value of the Trust. The remainder of the Trust provides Debtor's sole source of support for himself and his son.

Based upon the facts before us, the bankruptcy court's finding that Debtor's Plan satisfied § 1325(a)(4) is not illogical, implausible, or without support in inferences that may be drawn from the record. The foregoing ruling would also apply to § 1325(a)(7)'s requirement that the petition be filed in good faith; given the facts of this case, the other provisions of § 1325(a) do not appear to be at issue, despite Kirk's arguments to the contrary. See Rule 3015(f) ("If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.")

**C. Failure to Hold an Evidentiary Hearing**

Kirk also complains that the bankruptcy court erred by not holding an evidentiary confirmation hearing. Local Bankruptcy Rule ("Local Rule") 3015-1(g)(1) of the United Stated Bankruptcy Court for the Central District of California provides that objections to confirmation of a chapter 13 plan are to be "supported by appropriate declarations or other admissible evidence[.]" Between the objections to confirmation filed by Bradley Kirk and Kirk, together with Debtor's responses thereto,

the bankruptcy court had before it in excess of 100 pages of exhibits and the declarations of Bradley R. Kirk, Fritz J. Firman, Robert J. Dutil, CLPF, Min N. Thai, Regina Filippone and Eric Alan Mitnick. In addition to the foregoing, the bankruptcy court had previously held a two-day trial on Debtor's objection to Kirk's claim, where the bankruptcy court considered numerous exhibits and heard the testimony of Debtor, Min Thai, and Bradley R. Kirk.

By the time of Debtor's confirmation hearing on January 7, 2015, the bankruptcy court had already considered a vast amount of evidence that directly related to Kirk's confirmation objections. As explained by the Ninth Circuit in Acequia v. Clinton (In re Acequia), 787 F.2d 1352, 1358-59 (9th Cir. 1986), a bankruptcy court may consider evidence from prior evidentiary hearings even though the court must hold an evidentiary confirmation hearing.

Kirk objected to confirmation of Debtor's Plan, arguing it failed to satisfy §§ 1325(a)(3) and (a)(4). Kirk does not indicate what additional evidence could or should have been presented at the confirmation hearing that was not already presented at the objection to claim trial. By the time of confirmation, the bankruptcy court was amply familiar with the facts leading up to Debtor's bankruptcy and the facts that gave rise to Kirk's confirmation objections. The bankruptcy court did not abuse its discretion when it concluded that a further evidentiary hearing was not necessary.

**D.    Issues Not Addressed**

Kirk's Statement of Issues identifies eight issues to be presented in this appeal, but Kirk only lists five issues in its

Opening Brief, which we have consolidated into the three issues noted above. Any of the issues identified in the Statement of Issues that are not addressed by argument in the Opening Brief are deemed abandoned. See Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999) (an issue not adequately addressed by appellant in its opening brief is deemed abandoned).

Further, Kirk suggests that Debtor is the alter ego of the Trust. Kirk presented no admissible evidence to support such an assertion. Kirk also argues that a chapter 7 trustee could avoid, pursuant to §§ 548(a)(1)(A) and 544, the order Dutil secured on February 17, 2011, setting aside portions of the judgment Kirk obtained ex parte. Because Kirk did not assert such claim before the bankruptcy court and exceptional circumstances are lacking, we refuse to consider that argument now. See El Paso City v. Am. W. Airlines, Inc. (In re Am. W. Airlines), 217 F.3d 1161, 1165 (9th Cir. 2000) ("Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so."). See also Mano-Y & M, Ltd. v. Field (In re The Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014); Baldwin v. Marshack (In re Baldwin), 70 B.R. 612, 617 (9th Cir. BAP 1987) (citing Diamond Nat'l Corp. v. Lee, 333 F.2d 517, 528 (9th Cir. 1964)).

**E.    Request for Judicial Notice**

Finally, Kirk requests that the Panel take judicial notice of the decision entered in Bradley R. Kirk & Assoc., Inc. v. Spellman (In re Spellman), Case 2:15-cv-00507-PA, Docket No. 16 (C.D. Cal. Sept. 17, 2015), and the appeal thereof at Docket No. 17. The

-22-

Panel takes judicial notice of the above, but agrees with Debtor that it would not be proper for this Panel to consider any feasibility issue stemming therefrom as that issue was neither designated nor briefed in this appeal.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the holding of the bankruptcy court.